**Eddie STALLWORTH et al.,
Plaintiffs-Appellees,**

v.

**MONSANTO COMPANY,
Defendant-Appellee,**

v.

**J. W. PALMER et al.,
Movants-Appellants.**

**Nos. 75–2405 and 75–3425.**

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir.,
1970, 431 F.2d 409, Part I.

D. L. Middlebrooks, Jeffrey A. Cramer, David A. Reed, Pensacola, Fla., for movants-appellants.

Robert P. Gaines, Pensacola, Fla., Susan A. Cahoon, R. Lawrence Ashe, Jr., Atlanta, Ga., for Monsanto Co.

Kent Spriggs, Tallahassee, Fla., Elaine R. Jones, Barry Goldstein, Ronald L. Ellis, New York City, for E. Stallworth, et al.

Samuel Harris, E.E.O.C., Washington, D. C., for E.E.O.C.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES *, District Judge.

CLARK, Circuit Judge:

These consolidated appeals are taken from the district court's denial of two petitions for leave to intervene under Rule 24 of the Federal Rules of Civil Procedure. The district court held that the requests were untimely. We reverse.

* Senior District Judge for the Northern District of Texas, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Three parties are before us in connection with this case. The plaintiffs are black employees who filed this class action against their employer, Monsanto Company, under Section 1 of the Civil Rights Act of 1866, 42 U.S.C.A. § 1981 (1974), and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* (1974). Their suit attacks, among other things Monsanto's practice of using departmental or job group seniority to determine eligibility for promotion, vulnerability to layoff and rollback, and priority for shift and job selection. The would-be intervenors [appellants] are non-union white employees in the Intermediates department of Monsanto's Pensacola plant who claim that the remedial provisions of a consent order entered by the district court unnecessarily deprive them of their seniority rights.

Because the timeliness of the appellants' petition for leave to intervene is the central issue on appeal, it is important to establish the chronology and background of the litigation. This case began when the plaintiffs filed their complaint on April 13, 1973. After approximately one year of discovery and other pre-trial proceedings, they moved for partial summary judgment and preliminary injunctive relief. The district court scheduled a hearing on these motions for July 30 and 31, 1974. On July 17, counsel for Monsanto sent a letter to the district court advising it of two matters which the defendant thought required the court's attention before it ruled on the pending motions. Specifically, the letter expressed Monsanto's belief that the remedies sought by the plaintiffs would adversely affect some of Monsanto's white employees, and asked that the court ". . . notify or direct notification of Monsanto's white employees of the pendency of this action and give them a reasonable opportunity to intervene, or be joined as defendants . . .." The letter further stated that Monsanto was willing to post notices concerning the suit at its own expense, if the court would grant it permission to do so.[1] Such permission

1. The full text of the pertinent portion of the letter is as follows:

was not forthcoming. The plaintiffs opposed Monsanto's request, and it was denied by the district court during an untranscribed hearing held shortly after the letter was received.

The district court issued an order granting the plaintiffs' motions for partial summary judgment and enjoining a number of Monsanto's testing practices and educational requirements on September 12, 1974. Three months later it entered a pre-trial order establishing March 3, 1975 as the date on which the trial concerning the remaining issues in the case would begin. At the final pre-trial conference on February 24, the parties agreed to explore the possibility of reaching a settlement concerning at least some of the issues that had not yet been resolved. Because the discussions were progressing well, negotiations continued past the date on which the trial was to have begun. The parties arrived at a partial settlement of the case on March 7, and the district court approved their agreement. A consent order based upon the agreement was entered later that day. One of the provisions of the decree obligated Monsanto to abolish all departmental (or group) seniority rights and switch to a system of plant seniority plus certain residency requirements.[2] Another paragraph made "all roll backs effected by defendant in its wage roll jobs since February 1, 1975 . . . subject to the provisions of this order." The March 7 decree also awarded the plaintiffs permanent injunctive relief. Damages were left to be determined later by a special master. During the weeks that followed, the parties continued to negotiate and the district court entered additional consent orders disposing of minor issues.

The appellants first felt the impact of the March 7 order on March 17, when a rollback[3] that had been announced on February 7 and at least partially implemented during the intervening weeks was restructured in its seniority aspects to comply with the provisions of the consent decree. As a result, the appellants, who either had been told that they would not be rolled back or

Dear Judge Arnow:

Upon further review of plaintiffs' sundry pending motions for partial summary judgment and preliminary injunctive relief in the referenced case and the nature of the relief being sought, we were particularly struck by the potentially drastic adverse effects that such relief, if granted, would have upon a substantial number of white employees and a not inconsequential portion of the black employees. While we believe such relief to be wholly inappropriate under both the facts and the law, we cannot in good conscience ignore that it is being vigorously sought and will presumably be ruled upon in the relatively near future.

We believe and respectfully submit that two matters must be determined by the Court and acted upon prior to any hearing and determination of the propriety of preliminary injunctive relief:

(1) Notice to and the opportunity for permissive intervention by (or joinder as defendants of) Monsanto's white employees who would or might be adversely affected by plaintiffs' proposed relief is, at the very least, within this Court's discretion. [Citations omitted.] Monsanto accordingly respectfully urges the Court upon grounds of fundamental due process and basic fairness to notify or direct notification of Monsanto's white employees of the pendency of this action and give them a reasonable opportunity to intervene, or be joined as defendants, and to be represented and heard at any and all hearings at which relief is considered which will or may adversely affect their interests. Monsanto feels so strongly about the equities involved that it will, with the Court's permission, voluntarily undertake to post such notice on its bulletin boards. It is also willing to include Mr. Spriggs' statement of plaintiffs' case with such notice.

2. "Departmental or job group seniority" and "plant seniority" are types of competitive status seniority in which scarce benefits are allocated among competing employees on the basis of their total length of employment within a particular department or job group, and at a particular plant, respectively. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1265, 47 L.Ed.2d 444, 461 (1976); Cooper & Sobol, Seniority and Testing Under Fair Employment Laws: A General Approach to Objective Criteria of Hiring and Promotion, 82 Harv.L.Rev. 1598, 1601-02 n. 1 (1969).

3. A "rollback" is a device designed to avoid the necessity of outright layoffs while a company is experiencing temporary financial distress as a result of poor economic conditions. It accomplishes the reduction of payroll expenses by temporarily transferring some or all of the company's employees to lower paying job classifications.

had retained their original jobs while others had been rolled back, were moved to lower paying jobs. Other employees in their department (both white and black), who were senior to the appellants in terms of the modified plant seniority system mandated by the March 7 order but junior to them in terms of the departmental seniority system it displaced, either remained in or were returned to their original jobs.[4] Affidavits filed by the appellants in support of their motion for leave to intervene indicate that the affiants were told by Monsanto that the changes in the announced rollback were necessitated by the entry of the March 7 order.

The appellants filed their original petition for leave to intervene as plaintiffs on April 4, 1975, just under one month after the entry of the March 7 order, and three weeks after they were first affected by the decree. In the complaint accompanying their petition, they alleged that Monsanto had breached its contract[5] with them by agreeing to abolish all departmental seniority rights and switch to a system of modified plant seniority. They also asserted that the district court had abused its discretion under 42 U.S.C.A. § 2000e–5(g) (1974). Since the abolition of the departmental seniority system enabled some white employees who were not members of the class affected by racial discrimination to pass the appellants on the seniority ladder, the appellants argued that the relief granted by the decree was unnecessarily broad.[6] On April 21, the district court denied their motion as untimely. Monsanto voiced no objection, but the court found that the appellants must have known of the pendency of the lawsuit at some unspecified time prior to the date

on which they had filed their petition, and noted that they had presented no excuse for their "long" delay. The court also found that the progress of the case would be impeded if they were allowed to intervene. On May 13 the appellants noticed their appeal in No. 75–2405 from the district court's denial of this initial application for intervention.

After the special master had held hearings on the issue of damages, the appellants renewed their request for leave to intervene on July 8, 1975. Instead of a complaint, they filed a motion for relief from the March 7 order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The appellants made it plain as they had at the April 21 hearing, that they did not wish to challenge the decree insofar as it affected the rights of black employees, but only insofar as it affected the comparative seniority status of white employees. As a result, the plaintiffs announced that they no longer opposed the appellants' intervention. Monsanto, however, reversed its previous position and opposed the motion.

On July 29, the district court denied the appellants' renewed application for intervention without a hearing. It explained that it did so for three reasons. First, the district court ruled that it could not decide the substantive question raised by their Rule 60(b) motion because it was one of the issues they had raised in the complaint accompanying their original petition for leave to intervene, and jurisdiction over that issue had passed to this court as a result of the appeal in No. 75–2405. Second, it reasoned that their second request was even less seasonable than their first *because* the

---

4. An affidavit filed by K. C. Beene, Superintendent of Personnel and Industrial Relations at Monsanto's Pensacola plant, states that by June 23, 1975, all employees who had been demoted by virtue of the March 17 rollback had been returned to their original jobs. Of course, the more significant long-term effects of the shift in seniority systems persisted.

5. The appellants and Monsanto disagree about whether a contract that provides for the preservation of departmental seniority rights exists between Monsanto and the employees of its

Pensacola plant. We do not have that issue before us in this case and nothing in our decision should be construed as an indication of how we think it ought to be resolved.

6. The complaint also charged that the appellants had been illegally "bumped" from their jobs and their advantageous positions in the seniority hierarchy by members of the affected class as a result of the changes *made in the* seniority system by operation of the decree. They later abandoned their position that this aspect of the March 7 order violated Title VII.

renewed motion was filed after the original motion and because granting the petition would still delay the completion of the case. In particular, the district court suggested that it was possible that the hearings of the special master might have to be reopened if intervention were allowed. Finally, the district court expressed doubts concerning appellants' ability to satisfy the requirements of Rule 24(b)(2). In its view, the appellants' announced objective of securing reinstatement of the pre-March 7 departmental seniority system for the purposes of allocating benefits among white employees demonstrates that their dispute is entirely with Monsanto, and that their claim possesses no question of law or fact in common with the claims advanced by the plaintiffs. On August 28 the appellants noticed a second appeal, No. 75–3425, this time from the district court's denial of their renewed petition for leave to intervene.

## II. APPELLATE JURISDICTION

■ Under this circuit's "anomalous rule"[7] governing the appealability of orders denying intervention, we have provisional jurisdiction to determine whether the district court erroneously concluded that the appellants were not entitled to intervene as of right under section (a) of Rule 24, or clearly abused its discretion in denying their application for permissive intervention under section (b) of Rule 24. If we find that the district court's disposition of the petitions was correct, or within the ambit of its discretion, then our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision, and we must dismiss these appeals for want of jurisdiction. But if we find that the district court was mistaken or clearly abused its discretion, then we retain jurisdiction and must reverse. In either event, we are authorized to decide whether the petitions for

leave to intervene were properly denied. *See United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Weiser v. White*, 505 F.2d 912, 916–17 (5th Cir. 1975), *cert. denied*, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); *United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1977).

## III. TIMELINESS

### A. The Test

■ Whether leave to intervene is sought under section (a) or section (b) of Rule 24, the application must be timely. *United Air Lines, Inc. v. McDonald*, —— U.S. ——, ——, 97 S.Ct. 2464, 2466, 53 L.Ed.2d 423, 427 (1977); *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648, 662 (1973); *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103, 1115 (5th Cir. 1970). " 'Timeliness,' " as we recognized in *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1971), "is not a word of exactitude or of precisely measurable dimensions." Rule 24 fails to define it, and the Advisory Committee Note furnishes no clarification. As a result, the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown. *NAACP v. New York*, 413 U.S. at 367, 93 S.Ct. at 2603, 37 L.Ed.2d at 663; *United States v. United States Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977); *McDonald v. E. J. Lavino Co.*, 430 F.2d at 1071.

■ We have said that timeliness is not limited to chronological considerations but "is to be determined from all the circumstances." *United States v. United States*

**7.** *Weiser v. White*, 505 F.2d 912, 916 (5th Cir. 1974), *cert. denied*, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975). Our rule has been justly criticized, *see, e. g.*, 7A C. Wright & A. Miller, Federal Practice and Procedure § 1923, p. 627 (1972); 3B J. Moore, H. Fink, & J. Kennedy, Moore's Federal Practice ¶ 24.15, p.

565 (2d ed. 1977), and is often honored less in the observance than in the breach. *See, e. g., United States by Bell v. Allegheny-Ludlum Indus., Inc.* 553 F.2d 451 (5th Cir. 1977) (affirming an order denying leave to intervene because the petition was untimely, instead of dismissing the appeal).

*Steel Corp.*, 548 F.2d at 1235, *quoting NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603, 37 L.Ed.2d at 662. But it is possible to go beyond this general statement and formulate specific guidelines to govern the process by which the timeliness issue should be resolved. Not every circumstance is material. An analysis of the provisions of Rule 24,[8] decisions of the Supreme Court,[9] and our own precedent,[10] enables us to structure the district courts' discretionary power [11] by distilling four factors that must be considered in passing on the timeliness of a petition for leave to intervene.

■■■ *Factor 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene.* United Air Lines, Inc. v. McDonald, —— U.S. at ——, 97 S.Ct. at 2469, 53 L.Ed.2d at 431 (1977); *SEC v. Tipco, Inc.*, 554 F.2d 710, 711 (5th Cir. 1977); *McDonald v. E. J. Lavino Co.*, 430 F.2d at 1073; *Diaz v. Southern Drilling Corp.*, 427 F.2d at 1125. Actual knowledge is not required. *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603, 37 L.Ed.2d at 663. Although there is language in *NAACP* that could conceivably be read to require that the date on which the would-be intervenor became aware of the pendency of the action instead of the date on which he learned of his interest in the case be considered for the purpose of determining whether he acted promptly, *see* 413 U.S. at 366, 96 S.Ct. at 2603, 37 L.Ed.2d at 663, we reject the notion that the Supreme Court intended to establish such a rule for three reasons. First, given the size and sophistication of the would-be intervenor in *NAACP*, its knowledge of the pendency of the action was tantamount to knowledge that its interests were involved in the case. Therefore, the Supreme Court never addressed the question whether actual or constructive knowledge of the pendency of the case alone would be sufficient. Second, in the more recent *United Air Lines* decision the Supreme Court considered the speed with which the would-be intervenor in a class suit acted when she became aware that her interests "would no longer be protected by the named representatives" rather than when she learned that the lawsuit was pending. —— U.S. at ——, 97 S.Ct. at 2470, 53 L.Ed.2d at 432 (1977). Third, a rule

8. Rule 24 provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

\*   \*   \*   \*   \*   \*

9. *NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *United Air Lines, Inc. v. McDonald*, —— U.S. ——, 97 S.Ct. 2469, 53 L.Ed.2d 423 (1977).

10. *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103 (5th Cir. 1970); *United States v. Carroll County Bd. of Education*, 427 F.2d 141 (5th Cir. 1970); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970), *cert. denied sub nom.*, *Trefina A. G. v. United States*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1971); *United States v. United States Steel*, 548 F.2d 1232 (5th Cir. 1977); *United States by Bell v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451 (5th Cir. 1977); *SEC v. Tipco, Inc.*, 554 F.2d 710, (5th Cir. 1977).

11. *See generally* K. Davis, Discretionary Justice 103 (1969).

making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention. It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high. Often the protective step of seeking intervention will later prove to have been unnecessary, and the result will be needless prejudice to the existing parties and the would-be intervenor if his motion is granted, and purposeless appeals if his motion is denied. In either event, scarce judicial resources would be squandered, and the litigation costs of the parties would be increased. Such a rule would also mean that many individuals who excusably failed to appreciate the significance of a suit at the time it was filed would be barred from intervening to protect their interests when its importance became apparent to them later on. These effects would be inconsistent with two important purposes of Rule 24: to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation. Therefore, the time that the would-be intervenor first became aware of the pendency of the case is not relevant to the issue of whether his application was timely.

*Factor 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case. United Air Lines, Inc. v. Mc-Donald, —— U.S. at ——, 97 S.Ct. at 2470, 53 L.Ed.2d at 432; McDonald v. E. J. Lavino, 430 F.2d at 1073; Diaz v. Southern Drilling Corp., 427 F.2d at 1125–26.* As these cases make clear, the prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention

as soon as he knew or reasonably should have known about his interest in the action. Although it is sometimes suggested that any prejudice that would result by virtue of intervention is relevant, *e. g., McClain v. Wagner Electric Corp.,* 550 F.2d 1115, 1120 (8th Cir. 1977), ("the prejudice that will result to an opposing party if he is required to defend against a stale claim"); *Moten v. Bricklayers Internat'l Union,* 177 U.S.App. D.C. 77, 543 F.2d 224, 228 (1976), ("the improbability of prejudice to those already parties in the case"), this is incorrect. Whether allowing intervention will delay the progress of the case or prejudice the rights of the original parties is a factor which the district court must consider in exercising its discretion to permit intervention under section (b) of Rule 24. The third sentence of that section provides:

> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Since a similar provision is not included in section (a) of the Rule, it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a). Therefore, to take *any* prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right. Moreover, since section (b) provides that prejudice to the original parties must be considered when permissive intervention is sought, to take that same type of prejudice into account in the determining of timeliness would be to consider the same factor twice. We do not believe that either *United States by Bell v. Allegheny-Ludlum Indus., Inc.,* 553 F.2d 451 (5th Cir. 1977), or *United States v. United States Steel Corp., supra,* requires that prejudice to the existing parties be defined more broadly.

*Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.*

*Moten v. Bricklayers Internat'l Union,* 543 F.2d at 228; *see McDonald v. E. J. Lavino Co.,* 430 F.2d at 1073; *Diaz v. Southern Drilling Corp.,* 427 F.2d at 1126. The basis for this factor is the rule, first announced by this court in *Diaz* and *Lavino,* that the district court should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under section (a) than if he qualifies for intervention under section (b). The rule arose out of a concern that a section (a) intervenor "may be seriously harmed if he is not permitted to intervene." *McDonald v. E. J. Lavino Co.,* 430 F.2d at 1073; 3B J. Moore, H. Fink, & J. Kennedy, Moore's Federal Practice ¶ 24.13[1], at 521–22 (2d ed. 1977). Restating the rule in this fashion makes explicit its implicit foundation and permits varying degrees of harm among intervenors of the same type to be taken into consideration.

■ *Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.* NAACP v. New York, 413 U.S. at 368, 93 S.Ct. at 2604, 37 L.Ed.2d at 664. For example, if a would-be intervenor who had failed to apply for intervention promptly after he became aware of his interest in the case could advance a convincing justification for his tardiness, such as that for reasons other than lack of knowledge he was unable to intervene sooner, this would militate in favor of a finding that his petition was timely.

In addition to listing the factors that should be considered, it is important to mention some that should be ignored. We refer to what might be called "absolute" measures of timeliness. *See, e. g., McClain v. Wagner Electric Corp.,* 550 F.2d at 1120 ("how far the litigation has progressed when intervention is sought"); 3B J. Moore, H. Fink, & J. Kennedy, Moore's Federal Practice ¶ 24.13[1], at 523 (2d ed. 1977) ("the amount of time that may have elapsed since the institution of the action"). We explained in *Lavino* why a particular "absolute" measure of timeliness, whether the request for intervention came before or after the entry of judgment, was of limited significance:

> The rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties or (2) substantially interfere with the orderly processes of the court. In the present case neither of these results would have ensued if the intervention had been allowed.

430 F.2d at 1072. In sum,

> [i]f neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied.

7A C. Wright & A. Miller, Federal Practice and Procedure § 1916, at 582 (1972). Any "absolute" measure of timeliness is equally susceptible to this type of analysis because the timeliness requirement of Rule 24, which is "an elemental form of laches or estoppel," rather than a time bar of fixed dimensions, is relative, not absolute. Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863, 867 (1951); *see McDonald v. E. J. Lavino Co.,* 430 F.2d at 1074. Since the type of prejudice that is relevant to the determination of timeliness is already incorporated under Factor 2, consideration of "absolute" measures of timeliness separately would make Factor 2 redundant. In addition, while the likelihood that intervention may interfere with orderly judicial processes may be considered by the district court in deciding whether to permit intervention under section (b) of Rule 24, or in deciding to what extent an intervenor should be allowed to participate in the litigation, it has nothing to do with timeliness.

## B. Applying the Test

■ When the facts of this case are assayed by the factors listed above, the conclusion that the district court abused its discretion in ruling that the appellants' petition for leave to intervene was untimely is inescapable. To begin with, the district court's finding that the appellants were dilatory in applying for intervention is based

upon an improper legal standard and without support in the record. The court mistakenly used an unspecified time when it supposed that the appellants must have learned of the pendency of the action rather than the time when they knew or should have known of their interest in the action as its starting point in assessing whether they acted promptly to protect themselves. Moreover, the only evidence in the record on this issue tends to indicate that the appellants did not know that their interests might be affected by a lawsuit until March 7.[12] It cannot be said that they ought to have fathomed the potential impact of this admittedly complex case on their seniority rights at some earlier date. Nor did the appellants dawdle when they discovered that their interests might be affected by this litigation. By filing their petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly.

▇ With respect to the second factor, the district court again applied an incorrect legal standard. For the purpose of determining whether an application for intervention is timely, the relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case. From this perspective it is difficult to understand how either the plaintiffs or Monsanto could have been harmed by what was at most less than thirty days "delay." Certainly they have not shown that they were. As the Supreme Court expressed it in *United Air Lines,* a case which involved an almost identical period of "delay,"

> The . . . motion to intervene was filed less than three weeks after the "settlement" was incorporated in the District

'Court's final judgment, and necessarily "concern[ed] the same evidence, memories, and witnesses as the subject matter of the · original class suit." *American Pipe [and Construction Co. v. Utah],* 414 U.S. [538] at 562 [94 S.Ct. [746] at 770, 38 L.Ed.2d 713] (Blackmun, J., concurring.) There is no reason to believe that in that short period of time, [the existing parties] discarded evidence or [were] otherwise prejudiced.

—— U.S. at ——, n. 14, 97 S.Ct. at 2469, 53 L.Ed.2d at 432.

▇ Finally, the plaintiffs' opposition to Monsanto's request that it be permitted to notify its white employees of the pendency and potential impact of this action, when coupled with the district court's endorsement of their objection, constitutes an unusual circumstance which tilts the scales toward a finding that the appellants' application was timely. Since the plaintiffs urged the district court to make it more difficult for the appellants to acquire information about the suit early on, we do not think they should now be heard to complain that the appellants should have known about it or appreciated its significance sooner.

▇ In view of the circumstance that Factors 1, 2, and 4 militate strongly in favor of a finding of timeliness, it is not necessary for us to consider in this context the extent to which the appellants might be prejudiced if their motion were denied. We hold that the district court abused its discretion in ruling that the appellants' request for intervention was untimely.

We have considered but find distinguishable two recent decisions of this court in which intervention was denied because the petition for leave to intervene was unseasonable. In *United States by Bell v. Allegheny-Ludlum Indus., Inc.,* 553 F.2d 451

---

12. All three of the affidavits filed by the appellants in support of their original petition contain the following statement:

> I was never informed prior to March 7, 1975 that any of my contractual rights were in jeopardy in any law suit or that my rights were even in issue in any law suit.

During oral argument, counsel for the appellants stated that his clients first learned of the consent decree by means of an inter-office memorandum circulated on March 7. Nothing in the record indicates that the appellants knew of the consent order prior to March 7.

(5th Cir. 1977), the would-be intervenors were dilatory in filing their request, and proffered no excuse for their delay. Although they had learned of the existence of the consent decree three days after it was formulated, they waited nine months after its entry, more than seven months after its legality had been adjudicated, and six months after its implementation, before seeking intervention. Moreover, no unusual circumstances weighing in favor of allowing intervention existed, and we found that the existing parties to the litigation would be seriously prejudiced if leave to intervene were granted. Similarly, in *United States v. United States Steel Corp.,* 548 F.2d 1232 (5th Cir. 1977), we agreed with the district court's determination that an application for intervention came too late. There, the would-be intervenor had learned the terms of two proposed consent orders while they were being negotiated, but procrastinated until nearly one year after the entry of the decree before seeking intervention. Once again, no special circumstances militating in favor of intervention were present, and, had leave to intervene been granted, the existing parties to the case would have been adversely affected by the would-be intervenor's delay. The basis for a ruling of untimeliness that existed in *Allegheny-Ludlum* and *United States Steel* is not present here.

### IV. INTERVENTION UNDER SECTIONS (a)(2) AND (b)(2) OF RULE 24

■ Since the district court must decide on remand whether the appellants are able to satisfy the other requirements of sections (a)(2) and (b)(2), it is appropriate for us to discuss these matters now. *United States v. Myers,* 550 F.2d 1036, 1048 (5th Cir. 1977); *United States v. Scanland,* 495 F.2d 1104, 1108 (5th Cir. 1974).

### A. Intervention as of Right

■ Under Rule 24(a)(2) an individual is entitled to intervention as of right . . . [1] when [he] claims an interest relating to the property or transaction which is the subject of the action and [2] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, [3] unless [his] interest is adequately represented by existing parties. Fed.R.Civ.P. 24(a)(2). We note at the outset that the appellants meet the second and third requirements. Since neither the plaintiffs nor Monsanto have either voiced the appellants' concerns or expressed a desire to do so, their interests are not adequately represented by the existing parties to the case. *United States v. United States Steel Corp.,* 548 F.2d at 1236; *Martin v. Kalver Corp.,* 411 F.2d 552, 553 (5th Cir. 1969). In addition, the existence of the consent order in its present form would, as a practical matter, impair the appellants' ability to vindicate their interests in a separate proceeding. *EEOC v. American Tel. & Tel. Co.,* 506 F.2d 735, 741–42 (3d Cir. 1974). Unlike the situation that existed in *United States v. City of Jackson,* 519 F.2d 1147, 1152 (5th Cir. 1975), if a state or federal judge in a separate proceeding decided that the appellants' contentions were meritorious, he would be unable to award them effective relief without generating an injunctive command that would overlap or conflict with the March 7 order.

■ We cannot determine on the present state of the record, however, whether the appellants possess the "significantly protectable interest" in the subject matter of this case that is necessary to satisfy the first requirement. *Donaldson v. United States,* 400 U.S. 517, 532, 91 S.Ct. 534, 543, 27 L.Ed.2d 580, 590 (1971). The appellants contend that the consent decree unnecessarily interferes with their contractual relations with Monsanto. The record contains no finding concerning the existence of a contract, and we are of the view that the issue should be resolved only after the appellants have been afforded the benefit of an evidentiary hearing. *See United States v. Louisiana,* 543 F.2d 1125, 1128 (5th Cir. 1976). If the district court finds that a contractual relation exists between the appellants and Monsanto, then the interest

requirement of section (a)(2) is satisfied. The appellants' position would then be analogous to that of a labor union which seeks to intervene as a defendant in a Title VII suit in order to protect the existing seniority provisions of its collective bargaining agreement. One court of appeals has held that the union's interest under these circumstances is sufficient to meet the *Donaldson* test. *EEOC v. American Tel. & Tel. Co.,* 506 F.2d 735, 741–42 (3d Cir. 1974). Another has gone nearly as far by insisting that the district court consider the interests of employees who are not members of the affected class in assessing the propriety of proposed settlements in Title VII suits. *Mandujano v. Basic Vegetable Products, Inc.,* 541 F.2d 832, 837 (9th Cir. 1976). Although "seniority advantages are not indefeasibly vested rights," *United States v. Bethlehem Steel Corp.,* 446 F.2d 652, 663 (2d Cir. 1971), and cannot bar the way to effective Title VII relief to members of a class affected by racial discrimination, *e. g., Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), they nonetheless represent an expectancy whose significance is difficult to overemphasize,[13] and which should not be lightly or blindly swept aside. *See Stevenson v. International Paper Co.,* 516 F.2d 103, 118 (5th Cir. 1975). On the other hand, should the district court determine that no contract exists between the appellants and Monsanto, their interest in this case would not meet the challenge posed by *Donaldson,* and they would not be entitled to intervene as of right. In this event, the question whether they should be granted leave to intervene under section (b)(2) of the Rule must be addressed.

## B. Permissive Intervention

▉▉▉ Determining whether an individual should be permitted to intervene is a two-stage process. First, the district court must decide whether "the applicant's claim or defense and the main action have a question of law or fact in common." Fed.R. Civ.P. 24(b)(2). If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed. 7A C. Wright & A. Miller, Federal Practice & Procedure § 1911, at 541–42 (1972). Since the only issue that must be resolved in the first stage is a question of law, *In re Estelle,* 516 F.2d 480, 488 n. 1 (5th Cir. 1975), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380 (1976) (Godbold, J., concurring), and further factual development is unnecessary, we need not defer to the district court on this point. In light of the liberal construction that the "interest" requirement of section (b)(2) has received, *see, e. g., SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 459, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293, 1305 (1940); *In re Estelle,* 516 F.2d at 485 (opinion of Tuttle, J.); *Textile Workers Union of America, CIO v. Allendale Co.,* 96 U.S.App.D.C. 401, 226 F.2d 765, 769 (1955); Shapiro, Some Thoughts on Intervention Before Courts Agencies and Arbitrators, 81 Harv.L.Rev. 721, 726 (1968), the appellants plainly meet the first test.

▉▉▉ Because the district court's determination concerning the advisability of allowing intervention in the second stage is

---

**13.** As the Supreme Court stated in *Franks*:

Seniority systems and the entitlements conferred by credits earned thereunder are of vast and increasing importance in the economic employment system of this Nation. S. Slichter, J. Healy, and E. Livernash, The Impact of Collective Bargaining on Management, 104–115 (1960). Seniority principles are increasingly used to allocate entitlements to scarce benefits among competing employees ("competitive status" seniority) and to compute noncompetitive benefits earned under the contract of employment ("benefit" seniority). *Ibid.* We have already said about "competitive status" seniority that it "has

become of overriding importance, and one of its major functions is to determine who gets or who keeps an available job." *Humphrey v. Moore,* 375 U.S. 335, 346–347, 84 S.Ct. 363, 370, 11 L.Ed.2d 370, 380 (1964). "More than any other provision of the collective [bargaining] agreement . . . seniority affects the economic security of the individual employee covered by its terms." Aaron, Reflections on the Legal Nature and Enforceability of Seniority Rights, 75 Harv.L.Rev. 1532, 1535 (1962).

424 U.S. at 766, 96 S.Ct. at 1265, 47 L.Ed.2d at 462.

reviewable only for a clear abuse of discretion, *Allen Calculators, Inc. v. National Cash Register Co.,* 322 U.S. 137, 142, 64 S.Ct. 905, 907, 88 L.Ed. 1188, 1192 (1944); *Korioth v. Briscoe,* 523 F.2d 1271, 1278 n. 24 (5th Cir. 1975), and that discretion is still to be exercised, we merely note this appears to be a classic example of the type of case in which the rights asserted by two groups of workers employed by the same defendant should be adjudicated in one action rather than in two. "With little strain on the court's time and no prejudice to the litigants, the controversy can be stilled and justice completely done" if the appellants are granted permission to intervene. *McDonald v. E. J. Lavino Corp.,* 430 F.2d at 1074.

## V. DISPOSITION

Since we hold that the appellants' original petition for leave to intervene was timely, we need not reach the issues presented by No. 75–3425. The decision of the district court challenged in No. 75–2405 is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion. The appeal in No. 75–3425 is dismissed as moot.

No. 75–2405—REVERSED and REMANDED.

No. 75–3425—DISMISSED.