Willie RHOADES, et al., Plaintiffs,

v.

The JIM DANDY COMPANY,
Defendant.

Civ. A. No. 74–AR–0874–S.

United States District Court,
N.D. Alabama, S.D.

July 11, 1985.

Susan W. Reeves, Reeves & Still, Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs.

J. Richard Walton, Chris Mitchell, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, Ala., for defendant.

## OPINION & ORDER

ACKER, District Judge.

### MEMORANDUM OPINION

The Court of Appeals for the Eleventh Circuit at 747 F.2d 1360 reversed this court's denial of the intervention petition of Elizabeth Pruitt at 97 F.R.D. 505, correctly finding that this court did not consider all four factors bearing on the timeliness of Ms. Pruitt's petition, as required by *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir.1977). The Eleventh Circuit, of course, recognizes: "The question of timeliness lies within the district court's discretion". 747 F.2d 1360. It points out, how-

ever, that *Stallworth* requires that all four factors *must* be considered. 747 F.2d 1366.

■ If this court had been correct in its belief that intervention necessarily presupposes the existence of a viable claim by some plaintiff predating the intervention petition, this court's failure to deal with all four *Stallworth* factors might be excusable. This court now having been disabused of this false premise, the fact that none of the three named plaintiffs (neither Mr. Walker, nor Ms. Rhoades nor Ms. Lowery) had any cause of action against The Jim Dandy Company, will no longer play any part in the decision as to whether or not to allow Ms. Pruitt's intervention. Pursuant to the mandate of the Eleventh Circuit, the court will now limit itself to a discussion of the four *Stallworth* factors as they bear on the instant set of circumstances.

The Pertinent Facts:

The parties basically agree as to the facts which arguably bear on the timeliness of Ms. Pruitt's application for intervention. After the mandate Jim Dandy has attempted to add the fact that after the hearing conducted on January 6, 1983, the plant to which Ms. Pruitt applied for employment has been destroyed by fire. However, the court concludes that it should only consider facts which were available to the parties on January 6, 1983, when Ms. Pruitt's petition was submitted for decision. The court will not consider any events occurring thereafter. The only pertinent fact made known to the court after the recent Eleventh Circuit mandate and not known by the court when it denied intervention on March 24, 1983, is the fact that Ms. Reeves, one of the attorneys-of-record for the then putative class which disappeared as a result of the March 24, 1983 order, wrote Ms. Pruitt a letter on December 18, 1981, received by Ms. Pruitt, informing Ms. Pruitt of the pending action, inviting a response from Ms. Pruitt, and to which Ms. Pruitt responded.

Ms. Pruitt informally applied for work at Jim Dandy in 1970, but was told by a plant guard that Jim Dandy was not hiring, and Ms. Pruitt did not complete an application form. Then on July 12, 1972, Ms. Pruitt filled out an application and was interviewed but, according to her, was told that Jim Dandy was not hiring women. She could not identify the employee who told her this. She left the Jim Dandy premises and never returned. She knew, however, that women were, in fact, employed by Jim Dandy in plant jobs in 1972. She was totally unaware of the existence of this suit until she received Ms. Reeves' letter on approximately December 19, 1981, and she met with Ms. Reeves on January 6, 1982. She did not file her motion to intervene until December 16, 1982, shortly after this court gave notice of an evidentiary hearing to be held on the issue of class certification of a female class.

Jim Dandy's employee responsible for interviewing and hiring applicants for plant jobs in 1972 was Walter Rogers. Mr. Rogers died on March 24, 1981, without ever having been questioned concerning Ms. Pruitt. Mr. Larry Brand was employed by Jim Dandy as personnel manager in 1973. He succeeded Mr. Rogers. This means, of course, that Mr. Brand came to work after Ms. Pruitt last had any contact with Jim Dandy. Jim Dandy sold its plant in June 1981, before the filing of Ms. Pruitt's intervention petition.

The First *Stallworth* Factor:

■ Ms. Pruitt knew of the existence of this case on or about December 19, 1981. She met with Ms. Reeves on January 6, 1982, and several times thereafter. However, it was not until December 16, 1982, almost a year after she became aware of the suit, and of her interest in it, that she took any action to protect that interest. Not only was Ms. Pruitt made aware of the "interest" she might have in the action, but Ms. Reeves' letter was quite specific and to the point about the very serious need for a new, substitute, class-representing plaintiff. *Inter alia*, the letter said:

Two women who wanted jobs there [at Jim Dandy] but could not get them have been leading the fight. Now a federal

judge [Judge McFadden] may not let them do that anymore.

This communication is a clear articulation of a present need for an intervening plaintiff. In other words, Ms. Pruitt was told of a compelling "interest", but she waited a year to do anything about it. The knowledge of Ms. Reeves, even if not fully comprehended by Ms. Pruitt, was necessarily imputed to Ms. Pruitt after the meeting of January 6, 1982. Ms. Reeves knew long before she wrote to Ms. Pruitt, that there was a serious problem about the continued viability of Ms. Rhoades and Ms. Lowery as standard bearers for the putative class of females. This knowledge should be the triggering date from which to evaluate the timeliness question.

In *Stallworth* the would-be intervenors filed their petition less than one month after they learned of their interest in the case and thus, according to the Fifth Circuit, "discharged their duty to act quickly". 558 F.2d 267. There is no way to escape the fact that Ms. Pruitt became aware of her "interest" at the time she received Ms. Reeves' letter. To inform her of her "interest" was the purpose of the letter. Ms. Pruitt has offered no real excuse for not filing her intervention petition sooner. The court therefore finds that Ms. Pruitt either knew or reasonably should have known of her interest for such a long period of time before she filed her petition as to have waited an unreasonable period of time. She did not "discharge her duty to act quickly".

The Second *Stallworth* Factor:

█ The second *Stallworth* factor has to do with the "degree of prejudice to the *existing parties* as a result of the would-be intervenor's failure to move to intervene as soon as he knew, or reasonably should have known, of his interest". (emphasis supplied). 747 F.2d 1365. Obviously there was no prejudice to the "existing plaintiffs", i.e., Ms. Rhoades and Ms. Lowery, because they had already failed to prove any unlawful sex discrimination and had no claims. As to defendant Jim Dandy, this court on March 25, 1983, found Ms. Pruitt's delay to have been prejudicial. The court finds no reason to change its mind as to

this finding. In the brief recently filed in support of Ms. Pruitt's petition for leave to intervene, she makes clear her intention "to carry out the responsibilities that Rhoades and Lowery were ultimately not allowed to assume". This is consistent with the proposed intervention complaint submitted with the motion to intervene. It expressly invokes Rule 23(b)(2), F.R.Civ.P., and in recognition of the then impending departure of Ms. Rhoades and Ms. Lowery, purports to represent a new class of females. In other words, to Ms. Pruitt and her counsel, the adjudication against class certification affirmed by the Eleventh Circuit, constitutes only a temporary set back. She offers no explanation for the Eleventh Circuit's removal of its footnote 3 contained in its original opinion. After consideration of Jim Dandy's application for rehearing, the Eleventh Circuit removed footnote 3, which had stated:

> 3. Pruitt, if allowed to intervene, would represent a class of women interested in plant rather than supervisory jobs.

This court must assume that the removal of footnote 3 has some significance. Perhaps the explanation is that Ms. Pruitt's personal failure to file an EEOC claim, while not in and of itself preventing her intervention into a putative class action where some putative class members had met the EEOC filing prerequisites, nevertheless would make her a poor or inadequate substitute representative of a class consisting of a group of similarly time-barred plaintiffs. The Eleventh Circuit said:

> Without rendering judgment on the court's finding ... this consideration *alone* [no EEOC claim] is insufficient for denial [of intervention]. (emphasis supplied).

747 F.2d 1366.

This court cannot know whether or not the Eleventh Circuit, when it removed footnote 3, had read *Smith v. Flagship International* 609 F.Supp. 58 (U.S.N.Tex.1985). In any event the removal of footnote 3 may indicate agreement with the Texas district court which decided *Flagship*. Judge Fish there was faced, as this court is here faced,

with a substitute plaintiff seeking to revive a class action after the class action allegations had been dismissed. Judge Fish held that the concept there urged by the employee would allow the attorney for a putative class to revive class claims after denial of Rule 23 certification by simply refiling a new class action using a different putative class member as representative, thus being able to bring a potentially endless succession of class actions, each tolling the timeliness rule for its successor and thereby frustrating the principal purpose of Rule 23, namely, the promotion of efficiency and economy of litigation. The reasoning of Judge Fish, if here applied, would be strongly critical of what Ms. Pruitt confesses that she still has in mind, even after any encouragement she might have received from footnote 3 in the original opinion is no longer held out by the Eleventh Circuit.

Upon reconsideration, this court still finds that Ms. Pruitt's delay causes prejudice to Jim Dandy if she is allowed to become a substitute plaintiff, either individually or as the opening wedge for new Rule 23 allegations. This is true if for no other reason than if Ms. Pruitt had intervened promptly after learning of her interest, the recollections of potential witnesses would have been fresher by a year and the potential for locating witnesses and documents bearing on Ms. Pruitt's own claim would have been greater.

The Third *Stallworth* Factor:

■ The third factor requires a consideration of the extent of prejudice to the would-be intervenor if his petition is denied. Ms. Pruitt would expand this consideration to include the extent of prejudice to the would-be *class*, but *Stallworth* does not provide this as a factor. It is obvious that Ms. Pruitt, herself, will be "prejudiced" by a denial of her petition to intervene, that is, if she herself has a viable claim. This is true because if she is not allowed belatedly to ride in on a law suit which crumbled contemporaneously with her intervention petition, she is out of court. This sort of "prejudice" is, of course, the kind which is built into every statute of limitations and into the concept of laches. Nevertheless, the court concurs in Jim Dandy's conces-

sion that Ms. Pruitt is potentially "prejudiced" by a disallowance of her intervention petition. Any such "prejudice" however, was seemingly waived by the fact that Ms. Pruitt did not appeal from the initial denial of her intervention petition. The only appeal was taken by the named plaintiffs "from the order ... denying of [sic] class action status to the plaintiffs". Nobody appealed from the denial of Ms. Pruitt's petition to intervene.

The Fourth *Stallworth* Factor:

What are the "unusual circumstances" in this case, if any, which militate either for or against Ms. Pruitt's intervention? *Stallworth* does not define "unusual circumstances" but leaves it to the trial court's judgment and discretion as to what may constitute "unusual circumstances". This case is full of unusual circumstances, most, if not all, of which, militate against a finding that Ms. Pruitt's intervention petition is timely.

The first unusual circumstance is that Ms. Pruitt never appealed from the earlier ruling of this court. Apparently the Eleventh Circuit did not notice that Ms. Pruitt failed to make any appellate complaint since the Court did not address the issue and treated the case as if Ms. Pruitt had appealed from this court's denial of her intervention petition.

Secondly, prior to Ms. Pruitt's learning of her interest on or about December 19, 1981, she had already sat on her rights since 1972, during which time Jim Dandy's principal witness had died, its plant had been sold, and its witnesses and its records had been dispersed. Without in any way sitting in judgment on the propriety of Ms. Reeves' letter of December 18, 1981, to Ms. Pruitt, it is quite apparent that Ms. Reeves needed, or thought she needed, Ms. Pruitt as much as or more than Ms. Pruitt needed Ms. Reeves, and that Ms. Pruitt would have done nothing whatsoever to present a sex discrimination claim against Jim Dandy but for Ms. Reeves' belated, perceived need for an intervenor.

A third unusual circumstance in the case is the promise by Ms. Pruitt's counsel, de-

spite the Eleventh Circuit's removal of its original footnote 3, to continue to seek a new class certification using Ms. Pruitt as the class representative. In Ms. Pruitt's brief she states that "she is the would-be intervenor with class allegations in search of a forum to hear them ..." Ms. Pruitt even concludes her brief with the argument that "it would be wrong as a matter of law and unfair to the putative class members as a whole to find Mrs. Pruitt's intervention effort is untimely". If the matter were this simple, the Eleventh Circuit surely would have saved everybody the time and effort of evaluating the four *Stallworth* factors, and would not have removed footnote 3, but rather kept it as a part of its opinion and of its mandate.

The fourth unusual circumstance is the lag time between January 6, 1982, the date upon which Ms. Reeves met with Ms. Pruitt and upon which Ms. Pruitt clearly indicated to Ms. Reeves her willingness to participate, and the date intervention was first attempted. This delay from January 6, 1982, until December 16, 1982, should be attributable to Ms. Pruitt.

The fifth unusual circumstance is Ms. Pruitt's failure to file an EEOC complaint in 1972, something which, standing *alone,* does not prevent her from intervening in 1982, but which indicates some lack of interest and belief in her alleged cause of action.

The last, and perhaps the most unusual circumstance, and one which may also impinge on the first *Stallworth* factor discussed *supra,* is the fact that Judge McFadden entered a final pre-trial order in this case on December 30, 1981, shortly before Ms. Pruitt first met with Ms. Reeves. It listed as the only plaintiffs, "Willie M. Walker, Willie Rhoades and Bobbie P. Lowery". It contained no hint of the possibility of the later appearance of a new or intervening plaintiff. Rule 16(e), F.R. Civ.P. says:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent cause of action unless modified by a subsequent order.

The order following a pretrial conference shall be modified *only to prevent manifest injustice.* (emphasis supplied).

To allow Ms. Pruitt to intervene nearly a year after the final pretrial order and after Mr. Walker, Ms. Rhoades and Ms. Lowery were no longer plaintiffs (and, in fact, after there were *no* plaintiffs), would obviously necessitate a complete and total modification of the pre-trial order. In this court's opinion, such would more likely cause manifest injustice than "prevent manifest injustice".

*Conclusion*

■ *Stallworth* does not inform the courts what relative weight is to be accorded to each of its four factors. It only instructs that all four factors be considered. This court has, to the best of its ability, now considered all four of the *Stallworth* factors and finds that in the aggregate they lead to the conclusion that Ms. Pruitt's intervention petition was not timely, and that under Rule 24, F.R.Civ.P., her petition should be denied.

An appropriate separate order will be entered.