PARKER; Circuit Judge,
specially concurring.
While concurring with the majority opinion, I write separately to address some of the concerns expressed in the dissent.
The dissent professes surprise that the City would buy into the fundamental premises of the Plaintiffs’ case and is deeply troubled by what the dissent characterizes as a decision of the City to use a consent decree from the federal court as a crutch to achieve what it could not accomplish as a matter of its own independent decision making. Whether we, as judges, favor these types of controversies or not, whether we might have made different decisions if we had been a party, whether or not we lament the political process that on occasion produces consent decrees in civil rights cases is of no consequence. The fact is that the parties decided to settle this case.
This nineteen year old litigation was settled in a manner that provided a limited and narrowly tailored remedy that responded to the wrongs associated with the testing provisions for advancement within the Houston Police Department. The testing provisions effectively limited advancement opportunities for blacks and hispanics. The consent decree provides remedial positions available to the group of officers adversely affected by the old testing procedures. The narrowness of the settlement is further evidenced by the fact that the consent decree takes no jobs away from non-class members and imposes no duties or responsibilities on them. The consent decree does exclude non-class members from competition for 106 remedial promotions with remedial seniority, but the remedial promotions will not prevent non-class members from being promoted on regular promotion schedules, and there will be no demotions or layoffs in order to make remedial promotions possible. Based on the total aggregate promotions to sergeant and lieutenant from 1982-91, remedial promotions would only account for about 28% of the total promotions available over the five year period of remedial promotions, or 14% of the total promotions over the life of the consent decree. While these remedial promotions do have a limited effect on promotional opportunities of non-class members, it is difficult to imagine any remedial scheme that would not *1117 have some effect. The leveling of the playing field for black and hispanie officers does not unduly trammel the interests of officers who are not members of the plaintiff class.
Our role is not to delve into the propriety of the decisions that resulted in the settlement but to address the legal issues presented in this appeal. The issues in this case are straightforward. They are (1) whether there is some procedural or jurisdictional impediment to our reaching the merits, and, if not (2) whether the district court erred in approving the consent decree.
It is entirely proper for this Court to consider the merits of the consent decree once it finds that a motion to intervene was improperly denied. Under the “anomalous rule” governing the appeal of orders denying intervention in this Circuit, the Court has provisional jurisdiction to determine whether the district court erroneously concluded that Appellants were not entitled to intervene, and if it determines that the district court properly denied intervention, appellate jurisdiction evaporates and the case is dismissed; however, if the district court was mistaken, the appellate court retains jurisdiction and reverses. Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977). But our reversal of the district court’s denial of a motion to intervene does not end our review. If intervention was improperly denied, it is incumbent upon us to determine whether that denial was harmless error. See, e.g., Meek v. Metropolitan Dade County, 985 F.2d 1471 (11th Cir.1993) (affirming on the merits after reversing the district court denial intervention); In re Grand Jury Proceedings in Matter of Freemen, 708 F.2d 1571, 1575 (11th Cir.1983) (per curiam) (holding that failure to permit intervention was harmless where the appellate court “considered [the defendants’] claim ... as if the district court had allowed them to intervene”); Washington State Bldg. & Constr. Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir.1982) (holding that improper denial of motion to intervene did not require a new trial where proposed inter-venor was permitted “to participate in the argument on the appeal from the order granting summary judgment, and its conditions were duly considered”), cert. denied 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); Halderman v. Pennhurst State School & Hospital, 612 F.2d 131, 134 (3rd Cir.1979) (applying harmless-error analysis to denial of motion to intervene for the purpose of appealing).
Assuming the district court acted within its discretion in denying as untimely Appellants’ initial motions to intervene,[1] Appellants still have a sufficient interest to have a right to appeal the decision of the district court, and it was an abuse of discretion to deny intervention for purpose of-appeal. The district court’s denial of Appellants’ motions to intervene for the purpose of appeal cannot be sustained on the grounds of untimeliness. *1118 First, as noted in the majority opinion, the motions were filed at the invitation of the district court within the time frame for such motions set up by the district court. Second, although the initial motions to intervene were untimely under Stallworth, the Stallworth analysis does not lead to the same result with respect to the denial of the motions to intervene for appeal.
The second Stallworth factor requires that we consider the prejudice to existing parties if the appellants intervention is allowed. See Stallworth, 558 F.2d at 265. In the context of a Rule 24(a) intervention as of right, the only prejudice that we consider is that prejudice caused.by a would-be intervenor’s delay in filing its motion to intervene.[2] Since Appellants moved to intervene for the purpose of appeal only and did not raise any issues that were not presented to the district court, it does not appear that the delay in filing their motions could have prejudiced the existing parties. Cf. McDonald v. E.J. Lavino Company, 430 F.2d 1065 (5th Cir.1970) (holding that, although post-judgment motions to intervene are normally viewed with a “jaundiced eye,” the timing of post-judgment motion to intervene for the limited purpose of staking a claim to the proceeds of suit could not prejudice existing parties). The existing parties would have been in exactly the same situation if Appellants had filed their motions to intervene for appeal only on the day this ease was filed.
Perhaps more importantly, 42 U.S.C. § 2000e-2(n) creates an “unusual circumstance” under the fourth factor of the Stall-worth analysis. Under 42 U.S.C. § 2000e-2(n), if Appellants were denied entirely the right to intervene in this action, they would be precluded from raising any challenge to the consent decree. The fact that the district court initially denied Appellants motions to intervene without prejudice to refiling for the purpose of appeal removed the effect of 42 U.S.C. 2000e-2(n) from the “unusual circumstances” in factor four of the Stallworth test. Cf. NAACP v. New York, 413 U.S. 345, 368, 93 S.Ct. 2591, 2605, 37 L.Ed.2d 648 (1973) (absence of special circumstances warranting intervention illustrated by the fact that appellants were free to renew their motion to intervene following the entry of summary judgment). However, when the district court denied Appellants’ motion to intervene for appeal, it foreclosed the possibility of any further challenge or appellate review of the consent decree. This altered the balance of the Stallworth factors to the extent that it was an abuse of discretion to deny Appellants motions to intervene for the purpose of appeal.
If, as the dissent contends, intervention for ‘ the purpose of appeal were not permitted by the Rules,[3] it would have been error for the *1119 district court to deny Appellants’ initial motions to intervene because of 42 U.S.C. § 2000e-2(n)’s effect on the fourth Stallworth factor. We would still reach the merits of Appellants’ claims.
The district courts’ denial of Appellants’ motions to intervene for the purpose of appeal had no practical effect on their ability to present their positions on appeal. Although Appellants’ motions to intervene for the purpose of appeal were denied, Appellants did present their objections to the consent decree to this Court. Though not “allowed” to participate in the appeal by the district court, Appellants did participate in the argument on appeal and presented their objections to the consent decree to this Court, and their arguments were duly considered.
Appellants’ situation with respect to the proceedings before the district court was similar. Appellants had their day in court; they had the amount of process they were due. The dissent’s view of what constitutes one’s “day in court” would preclude consent decrees and would apparently mandate that these type cases all be tried. The dissent’s position appears to be that if one attains the status of intervenor, then he can effectively thwart any consent decree by being entitled to discovery, the presentation of evidence and witnesses, the right to a decision by a judge or jury, and the right to appeal. Such a narrow view of fairness hearings in the context of consent decrees is without discemable authority.
Appellants have no substantial grounds to complain regarding their participation in the fairness hearing. If Appellants had been granted intervenor status they would have been entitled to present evidence and have their objections heard at the hearings on whether to approve a consent decree, but they would not have the power to block the decree merely by withholding their consent. Local Number 93, International Asso. of Firefighters, etc. v. Cleveland, 478 U.S. 501, 529-30, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). Although Appellants were not technically permitted to intervene in the district court action, they were allowed to introduce evidence and cross-examine witnesses at the fairness hearing. Appellants were permitted to air their objections to the reasonableness of the decree and to introduce relevant evidence; the district court considered these objections and explained why it was rejecting them. See Cleveland, 478 U.S. at 529, 106 S.Ct. at 3079. Neither intervenors nor objectors are entitled to hold consent decrees hostage and require a full-blown trial in lieu of a fairness hearing. The issue here is how much process appellants were due. Even if appellants had been designated as interve-nors, they still got the process they were due.
The district court afforded Appellants de facto intervenor status at the fairness hearing and found their objections unconvincing. Appellants have not shown that the district court was wrong or that they would have been any more convincing at the fairness hearing if they had been designated interve-nors rather than objectors. Appellants suffered no prejudice by the district court’s failure to designate them intervenors apart from denying them their right of appeal on the merits. We have remedied that error.
For the reasons set out in the majority opinion and in this special concurrence, I agree with the majority that we have jurisdiction to review the merits of Appellants’ claims. After conducting such a review, I agree that any error in denying Appellants’ motions to intervene was harmless. Although I agree that the district court acted within its discretion in denying Appellants’ initial motions to intervene, I do not believe that that determination is critical to the outcome of this ease; if the initial motions to intervene were improperly denied, I would reach the same result.

. The dissent argues that the second Stallworth factor, prejudice to the existing parties, has no significant application in the case of a Rule 24(a) intervention. This flies in the face of the clear language of Stallworth. Stallworth does not say that prejudice to the parties is not a factor in a Rule 24(a) intervention, it says that, in the case of a Rule 24(a) intervention, prejudice other than that caused by the delay is not considered.
The dissent paraphrases a statement in Stall-worth that “to take any prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right.” Stallworth, 558 F.2d at 265. The dissent completely changes the meaning of this sentence by omitting the emphasis on 'any.' See Dissent at 1124. The dissent ignores, the sentence immediately preceding sentence which says that "it is apparent that prejudice to the existing parties other than that caused by the would-be interve-nor’s failure to act promptly was not a factor meant to be considered where intervention was sought under section (a).” Stallworth, 558 F.2d at 265.
The dissent’s complaint that the majority fails to distinguish between permissive intervention under Rule 24(b) and intervention as of right under Rule 24(a) with respect to the application of this factor completely ignores the fact that the majority only considered prejudice resulting from the Appellants’ delay in fifing their motions to intervene.

. According to the dissent, “this case was still early in its normal procedural history and that there is no question that the motions to intervene were timely under 'all the circumstances.’ " Dissent at 1124. The dissent’s characterization of the procedural posture of this case ignores the fact that this litigation had reached the point where it was obvious to all concerned that the parties intended to settle the case. While the motions to intervene might have been filed early in the procedural history of this case if this case had a more conventional procedural history and it were actually going to trial, they were filed very late in the game in the case of this consent decree.
The Supreme Court addressed a similar situation in NAACP v. New York, 413 U.S. 345, 366-69, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). In that case, the State of New York filed action seeking declaratory judgment that its literacy tests had not been used for the purpose or with the effect of denying or abridging the right to vote based on race or color. In NAACP, the appellants filed their motions to intervene just four days after the United States filed its consent to the entry of declaratory and seventeen days after learning of the pendency of the action. A three judge panel denied NAACP’s motion to intervene and granted summary judgment to State of New York. Supreme Court upheld denial of intervention as untimely despite the early stage of the litigation.
In the instant case, the underlying litigation had been going on for almost twenty years. The earliest of the motions to intervene were filed three months after Chief Nuchia issued a departmental circular to all police officers informing them of the potential settlement of the lawsuit and 37 days after the district court published notice of the terms of the consent decree. Under all the circumstances of this case, the district court did not abuse its discretion in denying Appellants' initial motions to intervene as untimely.

. The dissent contends that there is nothing in the Rules of Civil Procedure which contemplates a motion at the trial court level to intervene for appeal purposes only, so the denial of such an intervention cannot authorize us to reach the merits of Appellants’ claims. However, while it is true that intervention for the purposes of appeal only does not appear in the text of Rule 24, it does appear in the case law. See, e.g., United Airlines, Inc. v. McDonald, 432 U.S. 385, 395-96, 97 S.Ct. 2464, 2470-71, 53 L.Ed.2d 423 (1977) and the cases cited therein at n. 16.; see also C. Wright, A. Miller & M. Kane, 7C Federal Practice and Procedure § 1923, at 517 (2d ed. 1986).
*1119 The dissent also contends that there is nothing in the newly enacted amendments to the Civil Rights Act which evidences an intention to create an appeal from the fairness hearing. While this too is true as far as it goes, it ignores the fact that 42 U.S.C. 2000e-2(n)(2)(A) explicitly provides that those amendments shall not be construed to alter the standards for intervention under Rule 24. So 2000e-2(n) cannot preclude an intervention procedure that would otherwise be permissible.