The CITY OF BLOOMINGTON, INDIANA, the Utilities Service Board of Bloomington, Indiana, Monroe County, Indiana, Plaintiffs,

and

Indiana Public Interest Research Group (InPIRG), Proposed Intervening Plaintiffs-Appellants,

v.

WESTINGHOUSE ELECTRIC CORP., Monsanto Company, Defendants-Appellees.

UNITED STATES of America, Plaintiff-Appellee,

and

The State of Indiana, the Environmental Management Board of the State of Indiana, Intervening Plaintiffs,

and

Indiana Public Interest Research Group (InPIRG), Proposed Intervening Plaintiffs-Appellants,

v.

WESTINGHOUSE ELECTRIC CORP., Defendant and Third Party Plaintiff-Appellee,

v.

MONSANTO CO., Third Party Defendant-Appellee.

No. 85–2881.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1986.

Decided June 19, 1987.

Gary A. Davis, Knoxville, Ind., for plaintiffs-appellants.

A. Bruce White, Karaganis & White, Ltd., Chicago, Ill., David R. Berz, Weil, Gotshal & Manges, Ellen J. Durkee, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

The plaintiff-appellant Indiana Public Interest Research Group ("InPIRG") appeals the district court's denial of its motion to intervene pursuant to Federal Rule of Civil Procedure 24 in a consolidated suit brought by the United States, the State of Indiana, and the City of Bloomington, Indiana, against Westinghouse Electric Corporation. We affirm.

## I

In 1981, the City of Bloomington, Indiana, filed suit against the Westinghouse Electric Corporation ("Westinghouse"), alleging that Westinghouse had contaminated the city's sewer system and its Winston-Thomas sewage treatment plant with large quantities of polychlorinated biphenyls ("PCBs"). Plaintiffs alleged that PCBs are extremely toxic chemicals which cause cancer, liver damage, suppression of the immune system, birth defects, and impairment of reproductive capacity in laboratory animals. The city's suit, based on diversity jurisdiction, asserted claims against Westinghouse under Indiana common law theories. In June, 1981, the city amended its complaint to further allege that Westinghouse had also contaminated Bloomington's Lemon Landfill with PCBs.

In January, 1983, the United States filed a separate action against Westinghouse pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604, 9606, 9607, seeking the cleanup of two sites not owned by the City of Bloomington, Neal's Landfill and Neal's Dump, where Westinghouse had disposed of PCBs. The State of Indiana promptly intervened as a plaintiff in the federal government's suit.

In October, 1983, after substantial discovery in the city's case, the city and Westinghouse commenced settlement negotiations, that were publicized in the local media. The city and Westinghouse announced at a joint press conference the decision to seek a settlement. In December, 1983, the federal government and the state of Indiana agreed to join in these negotiations, and the parties announced that both suits were to be stayed until the parties could work out a settlement. The negotiations were lengthy because of the immensity and impact of the contamination problem, the number of parties involved, the complexity of the problem as well as the

time required to comply with the statutory hearings necessary for public input. The parties also needed time for public hearings to get input for the negotiations. The parties engaged in discussions for more than a year until December, 1984. During this time, the city's attorneys and technical experts held public meetings to apprise concerned citizens of the progress of the settlement negotiations. InPIRG filed a motion to intervene in the United States' suit on September 21, 1984, but the court took no action on the motion at that time. InPIRG, the would-be intervenor here, is a non-profit corporation founded "for the purposes of carrying out research, public education, and litigation in areas of public interest including environmental quality, consumer protection, citizen participation in government, and government responsiveness."

On December 3, 1984, the parties held a joint press conference at which they announced that they had agreed on a proposed consent decree, and copies of the proposed consent decree were distributed to members of the public. Two days after this announcement, the federal Environmental Protection Agency held a public information meeting to discuss the terms of the proposed settlement. Experts from the agency, the Indiana State Board of Health, the City of Bloomington and Westinghouse made presentations and fielded questions concerning the consent decree. The Bloomington City Council sponsored a series of public information meetings to discuss the terms of the settlement.

On March 6 and on March 20, 1985, the Bloomington City Council held meetings to consider whether the city would accept the proposed agreement. After hearing extensive public comment, including comments from the Indiana Public Interest Research Group, the City Council approved the consent decree. In May, 1985, all of the parties agreed to accept the consent decree and on May 20, 1985, the proposed decree was filed with the district court.

On May 24, 1985, pursuant to the requirements of 28 C.F.R. § 507, the U.S. Department of Justice filed notice of the proposed consent decree in the *Federal Register* and solicited public comments. The United States submitted the comments it received from members of the public, including comments from InPIRG, to the district court for its consideration. On June 8, 1985, the district court consolidated the city's case with the United States' case subject to final entry of the consent decree.

On June 24, 1985, InPIRG filed a motion pursuant to Federal Rule of Civil Procedure 24 to intervene in the City of Bloomington's action against Westinghouse and an amended motion to intervene in the United States' case. The district court denied InPIRG's motions, holding that they were untimely, and approved the consent decree on August 22, 1985. InPIRG appeals the denial of its motion to intervene.[1]

## II

The issue in this case is whether InPIRG's motion to intervene pursuant to Federal Rule of Civil Procedure 24 was timely.[2] "Whether appellants claim inter-

---

1. In its response brief, the City of Bloomington argues that this court does not have appellate jurisdiction pursuant to 28 U.S.C. § 1291 since a potential intervenor, not a party to this appeal, was denied intervention and filed a motion for reconsideration which was not ruled on in the court below. This argument is meritless since InPIRG and the other potential intervenor are distinct parties. The district court denied InPIRG's motion for intervention and that denial is appealable as a final judgment. *See Reedsburg Bank v. Apollo*, 508 F.2d 995, 997 (7th Cir.1975); 15 Wright & Miller, *Federal Practice and Procedure*, § 3914 at 559–61.

2. Federal Rule of Civil Procedure 24 states:

"(A) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(B) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to

vention of right or by permission, Rule 24 requires that the application be timely, a determination to be made from all the circumstances." *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 674 F.2d 970, 974 (3d Cir.1982). *See also NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *Garrity v. Gallen,* 697 F.2d 452, 455 (1st Cir.1983), *United Nuclear Corporation v. Cannon,* 696 F.2d 141, 143 (1st Cir.1982), *Stallworth v. Monsanto Company,* 558 F.2d 257, 263 (5th Cir.1977). In *NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973), the United States Supreme Court stated:

> "Intervention in a federal court suit is governed by Fed.Rule Civ.Proc. 24. Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."

*Id.* 413 U.S. at 365–66, 93 S.Ct. at (footnotes omitted). "[I]t has been uniformly held that the district court's determination of whether the requested intervention is timely may be reversed only for abuse of discretion." *Jones v. Caddo Parish School Board,* 735 F.2d 923, 926 (5th Cir.1984). *See also United States v. Kemper Money Market Fund, Inc.,* 704 F.2d 389, 391 (7th Cir.1983).

"'Timeliness' ... 'is not a word of exactitude or of precisely measurable dimensions.'" *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir.1977) (quoting *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir.1971)). "[T]imeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Id.* (quoting *United States v. United States Steel Corp.,* 548 F.2d 1232, 1235 (5th Cir.1977)). *See also United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). In *United States v. Kemper Money Market Fund, Inc.,* 704 F.2d 389 (7th Cir.1983) this court enumerated four factors to be considered in determining whether a motion to intervene was timely. We stated:

> "Among the factors to be considered are: the length of time the intervenor knew or should have known of her or his interest in the case; the extent of prejudice to the original litigating parties from the intervenor's delay; the extent of prejudice to the would-be intervenor if her or his motion is denied; and any unusual circumstances."

*Id.* at 391. *See also Garrity v. Gallen,* 697 F.2d 452, 455 (1st Cir.1983); *United Nuclear Corporation v. Cannon,* 696 F.2d 141 (1st Cir.1982); *Culbreath v. Dukakis,* (1st Cir.1980); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 264–66 (5th Cir.1977).

intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) PROCEDURE. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28 U.S.C. § 2403."

Initially, in determining whether In-PIRG's motion to intervene was timely we must consider "the length of time [InPIRG] knew or should have known of [its] interest in the case." *Kemper*, 704 F.2d at 391. *See also Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–65 (5th Cir.1977) (discussing the policies underlying this consideration).

In its brief, InPIRG states that it has been interested in and involved with the PCB problems since the City of Bloomington's PCB problem initially received public attention. InPIRG acknowledges that it was aware of the fact that the City of Bloomington filed its suit against Westinghouse on April 28, 1981, and that the United States commenced its action on January 4, 1983. InPIRG also admits that it was aware of the commencement of settlement negotiations in October 1983. Yet, InPIRG failed to seek intervention in the present litigation until September 24, 1984, over two years after Bloomington initiated its suit and almost a year after the parties started their settlement negotiations. On October 11, 1983 officials of the City of Bloomington and representatives of Westinghouse held a joint press conference to announce that they would begin settlement negotiations. They also publicized details concerning the proposed course which these negotiations would take. This press conference received extensive coverage in the Bloomington news media. Thus, In-PIRG had knowledge that its interests could be affected more than 11 months prior to the time it sought intervention in the present case.

In *United Nuclear Corporation v. Cannon*, 696 F.2d 141 (1st Cir.1982), the would-be intervenor waited seven and a half months after the filing of a well-publicized suit before making its motion to intervene. The First Circuit affirmed the district court's holding that the motion to intervene was untimely. In *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648, the Supreme Court upheld a district court holding that a motion to intervene four months after a suit was commenced was untimely. In the present case, InPIRG was well aware of the present case from its commencement in

1981. InPIRG knew of the beginning of settlement negotiations and the proposed course that those negotiations would take in October, 1983, eleven months prior to its initial motion to intervene. Thus, an examination of the initial factor in our analysis, the length of time the prospective intervenor knew or reasonably should have known of its interest before it petitioned to intervene (11 months), clearly establishes that InPIRG's motion to intervene was untimely.

The next factor we must consider is "the extent of prejudice to the original litigating parties from the intervenor's delay." *United States v. Kemper Money Market Fund, Inc.*, 704 F.2d 389, 391 (7th Cir. 1983). "The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion." *Garrity v. Gallen*, 697 F.2d 452, 455 (1st Cir.1983) (citing Note, *The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure*, 37 Va.L.Rev. 863, 867 (1951)). In the present case, the original parties began settlement negotiations in October, 1983 and did not reach a final agreement on a consent decree until June, 1985. InPIRG failed to file its initial motion to intervene until September, 1984. At that time In-PIRG only sought to intervene in the United States' case. InPIRG failed to seek intervention in the City of Bloomington's case until June, 1985 after all of the parties had accepted the terms of the consent decree. InPIRG's intervention at this time would render worthless all of the parties' painstaking negotiations because negotiations would have to begin again and In-PIRG would have to agree to any proposed consent decree. The terms of the consent decree in the present case were ironed out over a period of some fourteen months and submitted to the various parties for final consideration after giving members of the public an opportunity to comment. In-PIRG's motion endangers these efforts.

In *Jones v. Caddo Parish School Board*, 735 F.2d 923 (5th Cir.1984), a would-be intervenor made a motion to intervene after the original parties had spent nearly a year negotiating a settlement in a school desegregation case. The court elaborated on the prejudice that the original parties suffer when another party seeks to intervene after a settlement has been reached. In *Caddo*, the Fifth Circuit stated:

"Prejudice to the United States and the School Board is apparent. After nearly a year's negotiations they have finally arrived at a complex, interrelated settlement and consent decree disposing of the lawsuit between the two of them. If, as she requests, Ms. Phillips is made a party, there can be no consent decree without her agreement. Had Ms. Phillips intervened when she should have, she could have contributed to the settlement process, and quite possibly an agreement—surely different, and not necessarily only in ways favorable to Ms. Phillips' view, than the present one—could have been reached. To do so now, after positions have hardened, concessions here have been traded for those there, persons, groups, and institutions have 'gone on the line' publicly, and months of effort and mobilization of community and citizen involvement have been expended, may be impossible. Whether impossible or not, all the time, effort, and meetings will have been wasted, and the lengthy and difficult process will have to begin all over again, from 'square one' or worse. The settlement here took longer and doubtless more effort than a trial would. Certainly having to retry a case is recognized as prejudicial."

*Id.* at 935 (footnote omitted). As in *Caddo*, in the present case, there can be no consent decree absent InPIRG's agreement if InPIRG were allowed to intervene. Thus, the lengthy and difficult negotiation process in which the present parties participated would be wasted.

The parties also would be prejudiced if InPIRG were allowed to intervene since the implementation of the provisions of the consent decree would necessarily be delayed, and thus the parties would be unable to commence the cleaning up process of the PCB contamination which endangers public health. In *Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir.1980), the First Circuit affirmed the district court's denial of a motion to intervene as it was untimely. The court stated that "[a]s long as this suit remains unresolved, the public and private resources invested in it lie fallow and opportunities to rectify the wrongs of which the plaintiffs complain are unrealized." *Id.* at 22. *See also Garrity v. Gallen*, 697 F.2d 452, 457 (1st Cir.1983); *Delaware Valley Citizen's Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir.1982). In *Garrity v. Gallen*, 697 F.2d 452 (1st Cir.1983), the First Circuit affirmed a district court's denial of a motion to intervene in a class action in part because the original plaintiffs would be prejudiced by a delay in obtaining the relief accorded them in a settlement agreement. "Intervention to contest provisions of the implementation order would obviously be highly detrimental to members of the plaintiff class; the substantial relief afforded them by the order would probably be delayed—and, if applicants were successful in their challenge to the order, denied." *Id.* at 457. The court continued to state "Courts have not hesitated to give great weight to such potential adverse effects in denying leave to intervene." *Id.* In *Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102 (6th Cir.1981), the Sixth Circuit affirmed a district court's denial of a motion to intervene because "[a]llowing intervention at this point, would seriously delay the parties' ability to implement the provision of the Consent Decree, and this delay would necessarily work to the detriment of the individuals for whose welfare this suit was instituted." *Id.* at 105. *See also Nevilles v. Equal Employment Opportunity Commission*, 511 F.2d 303, 305 (8th Cir. 1975). In the present case, not only would the original parties suffer because the time invested in their painstaking negotiations would be wasted if InPIRG were allowed to intervene, but they also would have to postpone implementing the consent decree and

commencing the cleanup of PCB contamination in Bloomington.

The third factor we must consider in our determination of whether or not InPIRG's motion to intervene was timely is "the extent of prejudice to the would be intervenor if [its] motion is denied." *United States v. Kemper Money Market Fund, Inc.*, 704 F.2d 389, 391 (7th Cir.1983). *See also Stallworth v. Monsanto Co.*, 558 F.2d 257, 265–66 (5th Cir.1977). InPIRG is a nonprofit corporation claiming to represent the interests of the citizens of Bloomington and seeks to intervene because it claims that the proposed consent decree inadequately protects the interests of its members or the citizens of Bloomington. InPIRG "specifically sought intervention to present evidence to the District Court concerning the inadequacy of the consent decree to serve statutory purposes of protecting public health and environment." The district court stated that InPIRG "as [a] potential objector[ ] to the proposed consent decree, [has] had reasonable notice and opportunity to make any objections for this court to hear and consider, as is required before the settlement may be approved." *City of Bloomington v. Westinghouse*, No. IP 81–448–C, mem. op. at 11 (S.D.Ind. August 22, 1985). The original parties to the settlement held a number of meetings prior to the final approval of the consent decree and solicited comments from the public. In addition, the U.S. Department of Justice solicited public comments concerning the consent decree. The comments that the Justice Department received were submitted to the district court for its consideration. InPIRG submitted its comments to the Justice Department, and its views were presumably considered by the district court prior to the final entry of the consent decree. Thus, it is difficult to understand why InPIRG should be allowed to intervene in the present case for the purpose of presenting its views on the consent decree to the court after it had already been afforded an opportunity to do so. Because InPIRG has already had an opportunity to present its views to the district court, it would suffer little prejudice if it were denied permission to intervene at this late stage in the proceedings.

The final factor we must consider in our analysis of whether the district court abused its discretion in denying InPIRG's motion to intervene is whether there are "any unusual circumstances" which should be considered. *United States v. Kemper Money Market Fund, Inc.*, 704 F.2d 389, 391 (7th Cir.1983). "For example, if a would-be intervenor who failed to apply for intervention promptly after he became aware of his interest in the case could advance a convincing justification for his tardiness, such as that for reasons other than lack of knowledge he was unable to intervene sooner, this would militate in favor of a finding that his petition was timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir.1977). In its brief, InPIRG fails to point to any reason "other than lack of knowledge" for why it was unable to intervene sooner.

In view of the fact that 1) InPIRG failed to seek intervention until the settlement negotiations were nearly complete, 2) the original parties would be prejudiced if InPIRG were allowed to intervene now, 3) InPIRG would suffer little prejudice if intervention was not permitted here, 4) there are no unusual circumstances militating in favor of intervention here, we hold that the district court did not abuse its discretion in denying InPIRG's motion to intervene.

### III

The decision of the district court is affirmed.