**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2009

Charles R. Fulbruge III
Clerk

No. 09-10761

RALPH S. JANVEY,

Plaintiff – Appellant – Cross-Appellee

v.

GAINES D. ADAMS ET AL.,

Defendants – Appellees – Cross-Appellants

JAMES R. ALGUIRE ET AL.,

Defendants – Appellees

Consolidated with
No. 09-10765

RALPH S. JANVEY, in His Capacity as Court-Appointed Receiver,

Plaintiff – Appellant

v.

JIM LETSOS ET AL.,

Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

This is an appeal from the denial in part of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). The underlying case is ancillary to a securities fraud action by the SEC against a bank and related companies. *SEC v. Stanford Int'l Bank, Ltd.*, No. 3-09-0298-N (N.D. Tex.).

This case arises out of an alleged multi-billion-dollar Ponzi scheme perpetrated by the Stanford companies ("Stanford"), a network of some 130 entities in 14 countries controlled by R. Allen Stanford. According to the SEC, the companies' core objective was to sell certificates of deposit ("CD"s) issued by Stanford International Bank Limited in Antigua ("Stanford Bank"). Stanford achieved and maintained a high volume of CD sales by promising above-market returns and falsely assuring investors that the CDs were backed by safe, liquid investments. For almost 15 years, the Bank represented that it consistently earned high returns on its investment of CD sales proceeds, ranging from 12.7% in 2007 to 13.93% in 1994. In fact, however, the Bank had to use new CD sales proceeds to make interest and redemption payments on pre-existing CDs, because it did not have sufficient assets, reserves and investments to cover its liabilities.

The SEC filed suit against R. Allen Stanford, the Stanford Bank, and related companies on February 16, 2009. At the SEC's request, the district court issued a temporary order restraining the payment or expenditure of funds belonging to the Stanford parties. The district court also appointed Ralph S. Janvey as Receiver for the Stanford interests and granted him the power to conserve, hold, manage, and preserve the value of the receivership estate. On March 2, 2009, the district court issued a preliminary injunction prohibiting any disbursement of funds or securities in the name, on behalf of, or for the benefit of the Stanford entities.

As a result of the receivership order and the preliminary injunction, Stanford customers' investment accounts were frozen at the investment firms of Pershing, LLC, JP Morgan Clearing Corp., and SEI Private Trust Company. On March 27, 2009, the district court adopted procedures for the Receiver's review and release of any accounts that did not include proceeds from Stanford CDs. By late June, 97% of the investor accounts had been released from the freeze order. On June 29, 2009, the district court ordered the Receiver to complete his account review process within five weeks. The court specified that the freeze of all remaining accounts would expire at noon on August 3 unless the Receiver asserted claims against the account owners and obtained injunctive relief pending those claims.

Between June 22 and July 28, 2009, the Receiver filed the claims that led to this appeal. The Receiver named as "relief defendants" several hundred investors ( the "Investor Defendants") who had received proceeds from Stanford CDs which were paid into their customer accounts at Pershing, JP Morgan, and SEI prior to the underlying SEC enforcement action, the restraining order, and the receivership. The Receiver did not accuse the Investor Defendants of any wrongdoing. Some of them had redeemed their CDs, while others had not, but they all had received payments of purported interest. The Receiver moved for authority to recover these funds as assets of the Receivership Estate and to distribute them pro rata to all victims of Stanford's fraud. The Receiver also sought a preliminary injunction continuing the freeze of the Investor Defendants' accounts until the claims were finally resolved. The SEC argued to the district court that it would be inequitable to allow the Receiver to bring what are commonly referred to as "clawback" claims against the innocent Investor Defendants. After a hearing on July 31, the district court denied the Receiver's motion to continue the freeze as to "return of principal" on the redeemed CDs, but continued the freeze of the Investor Defendants' accounts as

to interest payments they had received on their CDs. The Receiver appealed and the Investor Defendants answered the appeal as appellees; some of them also cross-appealed. The SEC has filed an amicus brief siding with the appellees. On August 11, we issued a stay maintaining the freeze on both principal and interest in the Investor Defendants' accounts pending this appeal.

The resolution of the issues on appeal depends on the nature of a "relief defendant."[1] A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. *SEC v. Cavanagh*, 445 F.3d 105, 109 n.7 (2d Cir. 2006). A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds. *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). The court in *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2002), discussed the theory behind this "obscure common law concept":

> A 'nominal defendant' is a person who can be joined to aid the recovery of relief without an additional assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation. Because a nominal defendant has no ownership interest in the funds at issue, once the district court has acquired subject matter jurisdiction over the litigation regarding the conduct that produced the funds, it is not necessary for the court to separately obtain subject matter jurisdiction over the claim to the funds held by the nominal defendant; rather, the nominal defendant is joined purely as a means of facilitating collection. In short, a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant.

---

[1] We have borrowed from the succinct explanation of this issue given by the district court in *SEC v. Founding Partners Capital Management*, 639 F. Supp. 2d 1291 (M.D. Fla. 2009) and *SEC v. Sun Capital, Inc.*, 2009 WL 1362634 (M.D. Fla. May 13, 2009).

*Kimberlynn Creek Ranch*, 276 F.3d at 191-92 (citations and quotation marks omitted).

We conclude that the Receiver has satisfied the first requirement — that the payments the Investor Defendants received came from funds that had been ill-gotten by the Stanford interests. However, the Receiver has failed to establish that the Investor Defendants lack a legitimate claim to the CD proceeds they received from the Stanford Bank. They are therefore not proper relief defendants.

The jurisprudence requires only an "ownership interest" to preclude an entity from being a proper relief defendant. *Kimberlynn Creek Ranch*, 276 F.3d at 191; *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir.1991); *SEC v. Founding Partners Capital Mgmt.*, 639 F. Supp. 2d 1291, 1294 (M.D. Fla. 2009). It is undisputed that the Investor Defendants received the CD proceeds pursuant to written certificate of deposit agreements with the Stanford Bank, which granted them certain rights and obligations. There was a debtor-creditor relationship between the Investor Defendants and the Stanford Bank based on written agreements well before the underlying SEC enforcement action against Stanford and the resulting receivership and restraining order. This constitutes a sufficient legitimate ownership interest to preclude treating the Investor Defendants as relief defendants. *See Founding Partners Capital Mgmt.*, 639 F. Supp. 2d at 1294; *cf. Kimberlynn Creek Ranch*, 276 F.3d at 192 ("[R]eceipt of funds as payment for services rendered to an employer constitutes one type of ownership interest and would preclude proceeding against the holder of the funds as a nominal defendant."). The Investor Defendants are a far cry from the "paradigmatic" nominal defendant — a trustee, agent or depository. *See SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). The Investor Defendants have legitimate ownership interests in their CD proceeds, and therefore cannot be considered proper relief defendants. Consequently, the district court lacked

authority to freeze the Investor Defendants' assets. Therefore, the Receiver's claims and motions as to the Investor Defendants should have been denied completely.[2]

For these reasons, the district court's judgment is: (1) AFFIRMED insofar as it rejected the Receiver's motion to freeze the Investor Defendants' Stanford CD proceeds as to the return of their principal; (2) REVERSED to the extent it granted the Receiver's motion to continue the freeze of the Investor Defendants' CD proceeds as to the payment of interest. Furthermore, the stay order issued by this court pending this appeal is LIFTED, and this case is REMANDED for further proceedings consistent with this opinion.

---

[2] The Receiver's reliance upon *SEC v. George*, 426 F.3d 786 (6th Cir. 2005), is misplaced. *George* twice reaffirmed the principles we apply here:

> A relief defendant (sometimes referred to as a nominal defendant) may "be joined to aid the recovery of relief" and "has no ownership interest in the property which is the subject of litigation." *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *see also SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). "Federal courts may order equitable relief against [such] a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Cavanagh*, 155 F.3d at 136; *see also Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998).

*George*, 426 F.3d at 798. The *George* court did not indicate any intention to depart from the precedents on which it relied. The opinion does not cast any doubt upon our conclusion that the Investor Defendants here, against whom no wrongdoing has been alleged, have ownership interests in and legitimate claims to the proceeds of the CDs that they purchased from the Stanford Bank just as thousands of other innocent investors have done.