# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 3, 2021

No. 19-11131

Lyle W. Cayce
Clerk

Peggy Roif Rotstain,

*Plaintiff*,

Official Stanford Investors Committee,

*Intervenor Plaintiff—Appellee*,

*versus*

Annalisa Mendez; Jana L. Amyx; Carlos Barbieri; Dorris
Burchett; Giancarlo Delon et al.,

*Movants—Appellants*,

*versus*

Trustmark National Bank; The Toronto-Dominion
Bank; SG Private Banking (Suisse) S.A.; HSBC Bank,
P.L.C.; Blaise Friedli; Independent Bank, *formerly known as*
Bank of Houston; Societe Generale Private Banking,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-2384

Before OWEN, *Chief Judge*, and DAVIS and SOUTHWICK, *Circuit Judges*.
LESLIE H. SOUTHWICK, *Circuit Judge*:

This case arises from the Ponzi scheme perpetrated by R. Allen Stanford, his co-conspirators, and the entities Stanford owned or controlled. Plaintiffs, who are Stanford investors, brought suit against defendants, who provided banking services to Stanford. Appellants, who moved to intervene, are also Stanford investors and investment funds that purchased assignments of claims from Stanford investors. The district court denied their motion because it was untimely and because their interests are adequately protected by the existing parties. We AFFIRM the denial of intervention as of right and DISMISS the appeal of the denial of permissive intervention.

## FACTUAL AND PROCEDURAL BACKGROUND

The Stanford Ponzi scheme operated until February 2009, when the Securities and Exchange Commission ("SEC") brought suit in the United States District Court in Dallas. *See Janvey v. Adams*, 588 F.3d 831, 833 (5th Cir. 2009). Almost immediately, the district court appointed Ralph S. Janvey as receiver over the assets and records of Stanford, his co-conspirators, and the Stanford entities. *Id.* Two months later, the district court appointed an examiner to advise the court "in considering the interests of the investors." *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-298-N (N.D. Tex. Apr. 20, 2009) (order appointing examiner).

Then, in August 2010, the district court created the Official Stanford Investors Committee ("OSIC") to represent Stanford investors. *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-298-N (N.D. Tex. Aug. 10, 2010) (order creating OSIC). The order likens OSIC to a "committee appointed to serve in a bankruptcy case." *Id.* at 4. It states that "the members of the Committee shall owe fiduciary duties to Stanford investors." *Id.* It requires the receiver and OSIC to cooperate "in the identification and prosecution of

actions and proceedings for the benefit of the Receivership Estate and the Stanford Investors." *Id.* at 6. The Examiner chairs OSIC.

This action began in 2009 in Texas state court as a putative class action. Plaintiffs brought claims for fraudulent transfer and fraud on the theory that defendants knew or should have known that Stanford was operating a Ponzi scheme. Defendants removed the action to the United States District Court for the Southern District of Texas. The action was subsequently transferred to the United States District Court for the Northern District of Texas by order of the United States Judicial Panel on Multidistrict Litigation.

OSIC intervened in the litigation, bringing claims for fraudulent transfer, fraud, conversion, civil conspiracy, violations of the Texas Securities Act, and breach of fiduciary duty. OSIC brings its claims "on behalf of the Committee, the investors, and on behalf of the Receivership Estate." Any money recovered from defendants would be distributed to Stanford investors.

Defendants moved to dismiss OSIC's complaint on the basis that, among other things, OSIC lacks standing to pursue claims on behalf of the receivership estate and the Stanford investors. The district court held that OSIC has standing to assert claims on behalf of both the receivership estate and the Stanford investors.

The district court entered a scheduling order staying all discovery except for that relevant to class certification. The named plaintiffs subsequently moved to certify a class of "[a]ll persons who invested in [Stanford International Bank Limited ("SIBL")] CD(s) from August 23, 2004 – February 16, 2009, inclusive, and whose claims for losses related to SIBL CDs are recognized, authorized, and calculated by the United States Receiver for the Stanford Entities, Ralph S. Janvey." In November 2017, the

district court denied the motion for class certification and lifted the discovery stay. We denied a motion for leave to appeal the class certification order.

After denial of class certification, the parties engaged in significant fact discovery, including exchanging over one million pages of documents.

In April 2019, Appellants allege that OSIC and the Examiner sent confusing signals about OSIC's representation of investor claims. In a letter posted to a website, OSIC's counsel wrote:

> ALL conceivable legal claims are being vigorously prosecuted in the OSIC case and there is no imminent risk of any viable individual claim being time-barred. This COULD change in the future depending on developments in the OSIC case or other court rulings, but we believe that no deadlines are looming by which you will need to take any action to protect your individual interests.

A few days later, the Examiner posted a "Statement Concerning Investor Claims Against Bank Defendants." Under a section entitled "The Court's decision to deny class certification may impact your legal rights," the post stated:

> Under applicable law, the statutes of limitation began to run as to any claims of individual Stanford investors against the Bank Defendants when the Court entered its order denying class certification. . . . The Examiner encourages individual investors to consult with your own legal and other advisors about the potential implications of that decision on your own individual rights and possible recoveries. . . . The OSIC is vigorously litigating the OSIC Bank Case for the benefit of the Receivership Estate and Stanford claimants.
>
> The Examiner again encourages individual investors to consult with your own legal and other advisors about claims that you may be able to bring against some or all of the Bank Defendants,

No. 19-11131

and whether it is in your individual best interest to assert those claims.

A few days after that posting, in an email exchange with one of the Appellants, the Examiner explained:

> The claims asserted by OSIC are primarily claims brought on behalf of the Stanford entities that now belong to the Receiver. For example, a claim that Allen Stanford and his co-conspirators stole money from SIBL is a claim brought on behalf of SIBL. A claim that the Banks helped Allen Stanford commit fraud against the CD Investors (whether common law fraud or statutory fraud) is really the claim of the individual investor and isn't a claim of the Stanford entity.

Less than two weeks later, Appellants moved to intervene as of right and, alternatively, as permitted by the court. Appellants' complaint asserted claims for fraud, breach of fiduciary duty, conversion, and civil conspiracy as well as claims under the Texas Securities Act and the Texas Theft Liability Act. In August 2019, Appellants filed a supplemental motion for leave to intervene to add additional intervenors. The district court denied Appellants' motions to intervene on the basis that they were untimely and that OSIC adequately represents Appellants' interests. This appeal followed.

## DISCUSSION

### I. *Mandatory intervention*

An order denying intervention as of right is a final order that we have jurisdiction to review under 28 U.S.C. § 1291. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016). Our review of a denial is *de novo*. *Edwards v. City of Hous.*, 78 F.3d 983, 995 (5th Cir. 1996). Nonetheless, if a district court denies a motion to intervene because it was untimely and explains its

reasoning — and the district did both here — we review that decision for abuse of discretion. *See id.* at 1000.

A district court must permit intervention if a timely motion is filed and the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Tracking the language of the rule, the court has found that an applicant is entitled to intervention as of right if:

> (1) the application for intervention [is] timely; (2) the applicant [has] an interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest [is] inadequately represented by the existing parties to the suit.

*International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). The court should "liberally construe[]" the test for mandatory intervention and "allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 656–57 (5th Cir. 2015) (quotations omitted). A would-be intervenor bears the burden to prove an entitlement to intervene; failure to prove a required element is fatal. *Edwards*, 78 F.3d at 999.

We begin by analyzing timeliness. The court has identified four factors, sometimes referred to as the *Stallworth* factors, to determine whether a motion to intervene is timely: the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977).

No. 19-11131

### A.    Length of time

The first timeliness factor is "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Id.* at 264. In the discussion that follows, we employ the aspiring intervenors' premise that their interests are not protected; later we explain our different view. Determining the length of delay requires identifying the starting point. We have held that delay is measured "*either* from the time the applicant knew or reasonably should have known of his interest *or* from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards*, 78 F.3d at 1000 (emphasis added) (citation omitted).

In the case of a putative class action, the preferable starting point is when the applicant became aware that its interests would no longer be protected by the existing parties. If a court judged timeliness instead by the length of time an applicant knew of its interests, a putative class member would be motivated to intervene at the beginning of a case. Otherwise, a district court might later deny class certification and also deny a motion to intervene because of the amount of time that had passed since commencement of the lawsuit. That incentive would defeat a "principal function of a class suit," which is "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974). Assessing delay from the time when a movant becomes aware that its interests are unprotected encourages the movant to file a motion if and when class certification is denied or some other event suggests that the movant's interests are no longer protected. This rule would better serve the purpose of a class action lawsuit. *See id.*

Since this lawsuit was filed as a putative class action, the beginning date for measuring delay is when Appellants became aware that their

interests were no longer protected by the existing parties. When was that? OSIC argues that, at the latest, it was when class certification was denied. Appellants argue that it was in April 2019 when they received confusing messages from OSIC and the Examiner.

We conclude that Appellants knew or should have known that their interests were not protected by the existing parties when class certification was denied. To foreshadow our analysis, Appellants are chiefly concerned that OSIC may lack standing to bring claims on behalf of Stanford investors. At the moment class certification was denied, OSIC was the only existing party that could bring claims on behalf of the Appellants. Any fear that OSIC lacked standing to bring Appellants' claims reasonably should have materialized at that point.

The messages from the Examiner and OSIC's counsel are irrelevant. Those messages have no effect on the legal issue of whether OSIC has standing to bring investor claims. It might be different if OSIC had repudiated its intention to bring investor claims. The statements, though, cannot fairly be read that way. OSIC said that "ALL conceivable legal claims are being vigorously prosecuted in the OSIC case and there is no imminent risk of any viable individual claim being time-barred," and the Examiner said that "OSIC is vigorously litigating the OSIC Bank Case for the benefit of the Receivership Estate and Stanford claimants." OSIC in fact continues to litigate claims on behalf of Stanford investors.

Using the denial of class certification as the relevant starting point, Appellants waited 18 months before moving to intervene. The district court found that delay to be "significant." In many of our cases where we have found intervention motions to be timely, the delay was much shorter. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (delay of three weeks); *Edwards*, 78 F.3d at 1000 (delays of 37 and 47 days); *John Doe No. 1*

*v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (delay of one month).  We conclude that the district court did not abuse its discretion in determining that a delay of 18 months weighed against timeliness.

### B.    *Prejudice to parties*

The second factor in evaluating timeliness is "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case." *Stallworth*, 558 F.2d at 265.    This factor is the "most important consideration."  *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970).  The district court held that the existing parties would suffer prejudice if Appellants intervened because the parties would "need to conduct extensive additional discovery and drastically alter pretrial deadlines."

The existing parties would experience prejudice in at least two ways if Appellants were granted leave to intervene after a delay of 18 months.  First, the existing parties would face a second round of fact discovery, significantly increasing litigation costs.  When class certification was denied, the parties had conducted no discovery except for that related to class certification.  Had Appellants moved to intervene then, the parties could have negotiated and developed a comprehensive plan for simultaneous fact discovery of all claims.  Appellants' belated request for intervention, if granted, would force the existing parties to negotiate and conduct a second round of fact discovery, risking duplication, inefficiency, and increased costs.

Second, Appellants' tardiness will delay final distribution of any recovery.  Had Appellants moved to intervene earlier, discovery of all claims could have proceeded simultaneously, and there would have been minimal delay in achieving final distribution.  We have held that such delay is

prejudice that weighs against a finding of timeliness. *SEC v. Tipco, Inc.*, 554 F.2d 710, 711 (5th Cir. 1977).

Defendants Societe Generale Private Banking (Suisse) S.A. ("S.G. Suisse") and Blaise Friedli argue that they will be prejudiced by intervention because the parties will need to brief and argue whether the district court has personal jurisdiction over some of the defendants. We have held that "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206. Prejudice "that would have occurred whether the delay was one week or one year" is not relevant to the timeliness inquiry. *Glickman*, 256 F.3d at 378. The prejudice from resolving personal jurisdiction would result whether Appellants had waited one week or one year to move to intervene. Since such prejudice is inherent to intervention generally, and not specific to delay, we will not consider it in our timeliness analysis.

Given the prejudice to the existing parties in the form of costly and inefficient discovery and delay of final distribution, the district court did not abuse its discretion in finding that this factor weighs against timeliness.

### C.     *Prejudice to Appellants*

The third timeliness factor is "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied." *Stallworth*, 558 F.2d at 265. We have held that "critical to the third *Stallworth* inquiry is adequacy of representation. If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight." *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983). A movant's burden to show that its interests are not adequately protected is "minimal" and "satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404

U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969)).

Appellants' principal argument is that they will suffer prejudice because OSIC lacks standing to pursue the claims Appellants seek to bring, including the Texas Securities Act claim. Appellants rely on our opinion in *SEC v. Stanford Int'l Bank, Ltd. (Lloyds)*, 927 F.3d 830, 841 (5th Cir. 2019), *cert. denied sub nom. Becker v. Janvey*, 140 S. Ct. 2567 (2020). In that case, we vacated the district court's approval of a settlement between the receiver and insurance company underwriters. *Id.* at 836. The proposed settlement had required the entry of bar orders extinguishing the claims of, among others, coinsureds of insurance policies belonging to the Stanford entities. *Id.*

Several aspects of our decision in *Lloyds* are relevant. First, we reiterated a limitation on the standing of a federal equity receiver: "an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit." *Id.* at 841 (quoting *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)). Second, we found a connection between standing to bring a claim and standing to settle a claim. We quoted a sister circuit stating that "a trustee, who lacks standing to assert the claims of creditors, equally lacks standing to settle them." *Id.* (quoting *DSQ Prop. Co., Ltd. v. DeLorean*, 891 F.2d 128, 131 (6th Cir. 1989)).

Applying these concepts, we held that the receiver lacked standing to bring, and therefore to settle, extracontractual and statutory claims belonging to Stanford managers and employees. *Id.* at 843. Those claims, which arose from the underwriters' handling of insurance claims made by the managers and employees, were independent, non-derivative claims because they did not depend on any injury to the Stanford entities. *Id.* at 843, 845. The claims

did not affect the assets of the receivership because they did not implicate the proceeds of insurance policies belonging to the Stanford entities. *Id.* at 845.

A few months later, we issued an opinion in another suit involving the Stanford receiver's authority. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019), *cert. denied sub nom. Zacarias v. Janvey*, No. 19-1402, 2020 WL 7327837 (U.S. Dec. 14, 2020), *and cert. denied sub nom. Rupert v. Janvey*, No. 19-1411, 2020 WL 7327838 (U.S. Dec. 14, 2020). In *Zacarias*, two individual investors, the receiver, and OSIC brought suit against insurance brokers, alleging that the brokers had participated in the Ponzi scheme perpetuated by Stanford and associates. *Id.* at 889–92. The two investors brought various claims, including for violation of the Texas Securities Act. *Id.* at 892 n.16. The receiver and OSIC brought claims for breach of fiduciary duty, breach of the duty of care, unjust enrichment, fraudulent transfer, and civil conspiracy, though the civil conspiracy claim was later dismissed. *Id.* at 893.

The parties agreed to a settlement with the insurance brokers conditioned on a "global resolution of claims arising out of the Stanford Ponzi scheme." *Id.* at 894. Other Stanford investors objected to the settlement, arguing that the receiver and OSIC lacked standing to bring or settle claims belonging to the investors, including claims brought under the Texas Securities Act. *Id.* at 899. Overruling these objections, the district court approved the settlement and entered bar orders extinguishing any Ponzi-scheme claims against the insurance brokers. *Id.* at 894.

On appeal, we affirmed. We concluded that the receiver and OSIC had standing to settle the investors' claims because such claims were "derivative of and dependent on the receiver's claims and compete with the receiver for the dollars" that might be available. *Id.* at 901. First, the claims were derivative and dependent because the receiver was suing to recover for

an injury to the Stanford entities in the form of "additional liability Stanford incurred to its investors" due to the insurance brokers' participation in the Ponzi scheme. *Id.* at 900. The investors' claims depended on that injury; had the Stanford entities not been injured, neither would the individuals who invested in them. *Id.* Any difference between the styling of the receiver's claims and the investors' claims was mere "word play." *Id.* Second, the investors' claims would compete with receivership assets because "every dollar the [investors] recover from [the insurance brokers] is a dollar that the receiver cannot." *Id.*

We distinguished our holding in *Lloyds* because the defendants in *Lloyds* had not participated in the Ponzi scheme and the claims brought by the Stanford managers and employees were for "a distinct tort injury not based on any conduct in furtherance of the Ponzi scheme." *Zacarias*, 945 F.3d at 901. In contrast, the defendants in *Zacarias* were "active co-conspirators in the Ponzi scheme," and the investors' claims arose from conduct in furtherance of that scheme. *Id.*

These two opinions assist us in resolving whether OSIC has standing to bring the claims Appellants seek to bring. The district court ruled that OSIC has standing to pursue such claims as an assignee of the receiver.[1] That order has not been challenged. The issue of standing is before us, though, because of Appellants' argument that they could suffer prejudice if Defendants at some point succeed in their assertion that OSIC lacks standing to bring claims for investors like the Appellants. In dispensing with that argument, we affirmatively hold that OSIC has standing to assert the claims Appellants seek to bring because such claims are derivative of and dependent

---

[1] The district court also ruled that OSIC has standing to bring claims as an unincorporated association of Stanford investors. That theory of standing was not pressed by any party in their briefs and is therefore not considered here.

on the receiver's claims.  OSIC seeks recovery for injury to the Stanford entities in the form of the entities' additional liability to investors due to Defendants' conduct.  Appellants seek recovery for the same injury.  If the Stanford entities had suffered no injury, the investors would have no claims.

The claims here are more like the claims in *Zacarias* than *Lloyds*.  As in *Zacarias*, the Defendants here are alleged to be participants in the Ponzi scheme, even if unknowing ones, and the investors' claims are based on conduct in furtherance of that scheme.  As in *Zacarias*, any dollars the investors independently recover would be dollars OSIC cannot.  We are bound by *Zacarias* to hold that OSIC, as assignee of the receiver, has standing to bring the claims.

Appellants argue that *Zacarias* is inapposite because in that opinion we acknowledged that the receiver and OSIC had brought "only the claims of the Stanford entities — not of their investors."  *Id.* at 899.  That argument is misplaced.  Our holding today is not based on the precise claims that the receiver and OSIC actually brought in *Zacarias*.  Our holding is based on our conclusion in *Zacarias* that the claims the investors sought to bring were derivative of and dependent on the receiver's claims.  Because the claims were derivative and dependent, the receiver was authorized to bring them and to settle them.  Following *Zacarias*, the claims Appellants seek to bring are also derivative of and dependent on the receiver's claims, and OSIC is authorized to bring them as assignee of the receiver.

Although we do not identify any prejudice to Appellants, we note that even if there were some prejudice it would be mitigated by OSIC's role in this litigation.  OSIC was created for the purpose of representing the interests of Stanford investors.  *See SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-298-N (N.D. Tex. Aug. 10, 2010) (order creating OSIC).  OSIC owes fiduciary duties to the Stanford investors.  *Id.*  Any recovery OSIC obtains will be

distributed to the Stanford investors, including Appellants. *Id.* The denial of intervention will not exclude Appellants from recovery even if it were to prejudice them in some way.

This factor weighs against timeliness.

### D.    *Unusual circumstances*

The last timeliness factor is "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth*, 558 F.2d at 266. The district court found there are no unusual circumstances to consider. Appellants argue that there are unusual circumstances because Appellants were "led to believe that OSIC represented their interests, and that there was no need to intervene." Appellants point to statements in OSIC's pleadings that establish that OSIC is bringing its claims on behalf of the receiver, the receivership estate, the Stanford investors and itself. OSIC has not abandoned those claims. Since there are no unusual circumstances militating for or against timeliness, this factor is neutral.

### E.    *Weighing the factors*

Balancing the timeliness factors, the district court concluded that Appellants' motion was untimely. The analysis we just made supports that conclusion. Since timeliness is a requirement for mandatory intervention, the district court did not abuse its discretion by denying the motions to intervene on that basis, and we need not address the other factors for intervention.

## II.    *Permissive intervention*

We have "provisional jurisdiction" to review a district court's order denying permissive intervention. *Edwards*, 78 F.3d at 992. If the district court did not abuse its discretion by denying permissive intervention, we

"must dismiss the appeal for lack of jurisdiction." *Id.* We retain jurisdiction and reverse if the district court abused its discretion. *Id.* We have held that reversing a district court's decision denying permissive intervention is "so unusual as to be almost unique." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984).

A district court may permit intervention if a timely motion is filed and the applicant "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Timeliness under mandatory intervention is evaluated more leniently than under permissive intervention. *Stallworth*, 558 F.2d at 266. Because we conclude that the district court did not abuse its discretion by determining that the request for mandatory intervention was untimely, we also conclude that the district court did not abuse its discretion by determining that the request for permissive intervention was untimely. Accordingly, we do not have jurisdiction over the appeal of the denial of permissive intervention.

III. *Motion to strike*

In their brief, S.G. Suisse and Friedli argue that the district court lacks personal jurisdiction over them and that the order denying intervention can be affirmed on that alternative basis. OSIC filed a motion to strike the personal jurisdiction argument because S.G. Suisse and Friedli failed to file a cross-appeal as to that issue. This argument about personal jurisdiction is presented merely as an additional, though unsuccessful, reason to deny intervention. The motion has no merit.

The motion to strike is DENIED. The appeal of the denial of permissive intervention is DISMISSED. We AFFIRM the denial of intervention as of right.